JUDITH SHOPHET SIDKOFF (SBN 267048)
judith.sidkoff@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5704
Telephone:   (213) 623-9300
Facsimile:    (213) 623-9924

SHARI L. KLEVENS (Admitted *Pro Hac Vice*)
CRAIG M. GIOMETTI (Admitted *Pro Hac Vice*)
shari.klevens@dentons.com
craig.giometti@dentons.com
DENTONS US LLP
1900 K Street, N.W.
Washington, DC  20006
Telephone:   (202) 496-7500
Facsimile:    (202) 496-7756

J. RANDOLPH EVANS (Admitted *Pro Hac Vice*)
randy.evans@dentons.com
DENTONS US LLP
303 Peachtree Street, Suite 5300
Atlanta, GA 30308
Telephone:   (404) 527-4000
Facsimile:    (404) 527-4198

Attorneys for Defendant
Aspen American Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIGRO KARLIN SEGAL FELDSTEIN & BOLNO, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>ASPEN AMERICAN INSURANCE COMPANY, AND DOES 1-100, inclusive,<br><br>                    Defendants, | Case No. 2:17-cv-00811-GJS<br><br>**ASPEN AMERICAN INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM** |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

ASPEN AMERICAN INSURANCE COMPANY,

    Counterclaimant,

v.

NIGRO KARLIN SEGAL FELDSTEIN & BOLNO, LLC, AND FRED NIGRO,

    Counter-Defendants.

Defendant Aspen American Insurance Company ("Aspen"), for its Answer to Plaintiff Nigro Karlin Segal Feldstein & Bolno, LLC's Complaint for Declaratory Judgment and Breach of Contract (the "Complaint"), states as follows:

1.    Upon information and belief, Aspen admits the allegations contained in Paragraph 1.

2.    Aspen admits that it issued the insurance policy at issue in the Complaint to NKSFB at its place of business in Los Angeles County, California. Aspen lacks knowledge or information sufficient to form a belief about the truth of the allegation that Aspen "at all relevant times" was a corporation engaging in the business of insurance in Los Angeles County, California and, therefore, denies the same.

3.    To the extent the allegations contained in Paragraph 3 are directed at Aspen and to the extent a response is required, Aspen lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 3 and, therefore, denies the same.

4.    Aspen admits that Indian Harbor Insurance Company ("XL") issued an Errors and Omissions Insurance Policy (the "XL Policy") to NKSFB that had a policy period of June 21, 2015 through August 20, 2016. Upon information and belief, Aspen admits that XL delivered the XL Policy to NKSFB in Los Angeles, California. Aspen admits that the XL Policy provides coverage for "a claim for actual or alleged acts or omissions in the performance of professional services" but

affirmatively states that such coverage is subject to the terms and conditions set forth in the XL Policy.

5.     Aspen admits the allegations contained in Paragraph 5 but states that Endorsement No. 5 of the Aspen Policy purported to extend the end date of the Aspen Policy to August 21, 2016.

6.     Upon information and belief, Aspen admits that certain former clients of NKSFB asserted claims ("Claims") against NKSFB.  To the extent the allegations contained in Paragraph 6 refer to claims made by former clients other than the claims for which notice was provided to Aspen, Aspen lacks knowledge or information sufficient to form a belief about the truth of the allegations and, therefore, denies the same.  Aspen lacks knowledge or information sufficient to form a belief about the truth of the allegation contained in Paragraph 6 that the Claims were asserted "[i]n or about early 2016," and, therefore, denies the same.  Aspen lacks knowledge or information sufficient to form a belief about the truth of the allegation contained in Paragraph 6 that the former clients alleged "in or about early 2016" that "NKSFB had acted negligently in providing professional services to [the former clients]" and, therefore, denies the same.

7.     Paragraph 7 contains legal conclusions to which Aspen is not required to respond.  To the extent Paragraph 7 requires an answer, Aspen lacks knowledge or information sufficient to form a belief about the truth of the allegation contained in Paragraph 7 that NKSFB provided "timely" notice of the Claims to XL and Aspen and, therefore, denies the allegations contained in Paragraph 7.

8.     Upon information and belief, Aspen admits that XL accepted defense of the Claims under a reservation of rights.  Aspen admits that it reserved its rights with respect to the Claims but denies that it "acknowledged its potential coverage obligations."

9.     Aspen denies the allegations contained in Paragraph 9.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

10.     Upon information and belief, Aspen admits that XL paid amounts under the XL Policy toward a settlement of the Claims under a reservation of rights in which XL asserted coverage defenses and concluded that the settlement was not a reasonable compromise of the Claims.

11.     Aspen admits that it declined to contribute any amounts under the Aspen Policy toward the settlement of claims asserted against NKSFB by certain former clients based on Aspen's conclusion that the settlement of such claims entered into by NKSFB without Aspen's knowledge or consent was not a reasonable compromise of the claims.  Aspen admits that it reserved its rights with respect to its coverage defenses but denies that it asserted coverage defenses as a basis for its decision not to contribute any amounts under the Aspen Policy toward the settlement of the claims.

### FIRST CAUSE OF ACTION
### (Declaratory Relief)

12.      To the extent a response to Paragraph 12 is required, Aspen admits that NKSFB purports to seek declaratory relief pursuant to Code of Civil Procedure Section 1060, *et seq.*, but Aspen denies that NKSFB is entitled to the relief it seeks.

13.     Aspen admits that an actual controversy exists between NKSFB and Aspen but denies that NKSFB is entitled to the relief it seeks.

14.     Aspen admits that a judicial declaration of NKSFB's rights and Aspen's duties under the Aspen Policy is ripe but denies the remaining allegations contained in Paragraph 14 and further denies that a judicial declaration of NKSFB's rights and Aspen's duties under the Aspen Policy is ripe for the reasons stated in Paragraph 14,

15.     Aspen denies the allegations contained in Paragraph 15.

### SECOND CAUSE OF ACTION
### (Breach of Contract)

16.     Aspen repeats and re-alleges each of the responses to Paragraphs 1 to 15 above as if fully set forth herein.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

17. Aspen denies the allegations contained in Paragraph 17.

18. Aspen denies the allegations contained in Paragraph 18.

19. Aspen denies the allegations contained in Paragraph 19.

20. Aspen denies the allegations contained in Paragraph 20.

21. Aspen denies the allegations contained in Paragraph 21.

## PRAYER FOR RELIEF

Aspen denies that NKSFB is entitled to any of the relief sought in its Prayer for Relief.

## AFFIRMATIVE DEFENSES

Aspen, solely for itself, sets forth the following affirmative defenses applicable to all causes of action asserted in the Complaint.  Aspen reserves the right to restate or delete any affirmative defenses, or add additional affirmative defenses. By listing any matter as an affirmative defense, Aspen does not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under applicable law.

FIRST AFFIRMATIVE DEFENSE

(Release)

1. Plaintiff is barred from seeking certain relief sought in the Complaint because Plaintiff has released any claims for such relief including, but not limited to, claims for prejudgment interest.

SECOND AFFIRMATIVE DEFENSE

(Waiver)

2. Plaintiff is barred from seeking certain relief sought in the Complaint because Plaintiff has waived any claims for such relief including, but not limited to, claims for prejudgment interest.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## THIRD AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

3.     Plaintiff is not entitled to certain relief sought in the Complaint due to the application of the doctrine of accord and satisfaction including, but not limited to, claims for prejudgment interest.

## FOURTH AFFIRMATIVE DEFENSE

### (Breach of Agreement)

4.     Plaintiff's action fails to the extent that Plaintiff's claims and/or the relief sought by Plaintiff constitute a breach of the agreement entered into by Plaintiff and Aspen relating to the action brought by Plaintiff.

## FIFTH AFFIRMATIVE DEFENSE

### (Express Terms, Exclusions, Conditions, Definitions, Declarations, Endorsements and/or Limitations)

5.     Plaintiff's action against Aspen is barred or limited by the express terms, exclusions, conditions, definitions, declarations, endorsements, and/or limitations contained in the policy issued and/or alleged to have been issued by Aspen to Plaintiff (the "Aspen Excess Policy"), or any underlying policy or policies to which the Aspen Policy may follow form, including a policy issued by Indian Harbor Insurance Company (the "Indian Harbor Primary Policy").

## SIXTH AFFIRMATIVE DEFENSE

### (Claim Not First Made During Policy Period)

6.     Plaintiff's action against Aspen is barred to the extent that the claim(s) asserted by Plaintiff's former clients that is the subject of the Complaint (the "Claims") was not first made against Plaintiff and reported during the policy period of the Indian Harbor Primary Policy.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## SEVENTH AFFIRMATIVE DEFENSE

### (Definition of "Insured")

7. Plaintiff's action against Aspen is barred to the extent that the Claims are not made against an "insured" as that term is defined by the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

## EIGHTH AFFIRMATIVE DEFENSE

### (Definition of "Damages")

8. Plaintiff's action against Aspen is barred to the extent that the Claims do not seek "damages" as that term is defined by the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

## NINTH AFFIRMATIVE DEFENSE

### (Definition of "Professional Services")

9. Plaintiff's action against Aspen is barred to the extent that the Claims do not involve an act or omission in the performance of "professional services" as that term is defined by the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

## TENTH AFFIRMATIVE DEFENSE

### (Policy Limits/Satisfaction of Deductible)

10. Any duty of Aspen, if any, under the Aspen Excess Policy, is subject to the applicable limits of liability under the Aspen Excess Policy and the satisfaction of the applicable deductible(s) under the Indian Harbor Primary Policy.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Late Notice)

11. Plaintiff's action against Aspen fails to the extent that Plaintiff failed to timely notify Indian Harbor or Aspen of the Claims.

## TWELFTH AFFIRMATIVE DEFENSE

### (Voluntary Payments/Consent to Settle)

12. Plaintiff's action against Aspen fails to the extent that Plaintiff admitted liability, made any offer of settlement or payments, incurred any defense expenses or

1  other expense, or assumed any liability or obligation without the consent of Aspen or
2  any underlying insurers.

3  THIRTEENTH AFFIRMATIVE DEFENSE
4  (Cooperation Clause)

5  13.    Plaintiff's action against Aspen fails to the extent that Plaintiff failed to
6  cooperate with Aspen or any underlying insurers in the investigation, defense, and
7  settlement of the Claims.

8  FOURTEENTH AFFIRMATIVE DEFENSE
9  (Insurance Code Sections 22, 250 and 533)

10  14.    Plaintiff's action against Aspen fails to the extent that the Claims arose
11  from the intentional, willful, fraudulent, or unlawful acts of any insured under the
12  Aspen Excess Policy.

13  FIFTEENTH AFFIRMATIVE DEFENSE
14  (Loss-in-Progress/Known Loss/Known Risk Doctrines)

15  15.    Plaintiff's action against Aspen is barred by the loss-in-progress, known
16  loss, and/or known risk doctrines.

17  SIXTEENTH AFFIRMATIVE DEFENSE
18  (No Action)

19  16.    Plaintiff's action against Aspen fails to the extent that Plaintiff has not
20  complied with all terms of the Indian Harbor Primary Policy and/or the Aspen Excess
21  Policy and the amount Plaintiff owes has not been determined with Aspen's consent or by
22  actual trial and final judgment.

23  SEVENTEENTH AFFIRMATIVE DEFENSE
24  (Underlying Limits)

25  17.    Plaintiff's action against Aspen with respect to the Aspen Excess Policy
26  fails to the extent that the limits of any underlying policy or policies have not been
27  properly exhausted.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### EIGHTEENTH AFFIRMATIVE DEFENSE

(No Impairment of Rights)

18.    Plaintiff's action against Aspen fails to the extent that Plaintiff has impaired or prejudiced Aspen's or Indian Harbor's rights to subrogation, indemnity, contribution, and/or settlement.

### NINETEENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

19.    Plaintiff's action fails against Aspen to the extent that Plaintiff failed to mitigate its alleged damages.

### TWENTIETH AFFIRMATIVE DEFENSE

(Other Insurance)

20.    Plaintiff's action against Aspen fails to the extent that insurance coverage other than the coverage allegedly provided under the Aspen Excess Policy is available to Plaintiff.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

(Unclean Hands)

21.    Plaintiff's action against Aspen may be barred by the equitable doctrine of unclean hands.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

(Failure to Perform Policy Obligations)

22.    Plaintiff's action against Aspen is barred to the extent that Plaintiff has failed to perform all of its obligations under the Indian Harbor Primary Policy or the Aspen Excess Policy.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

(Business Enterprise Exclusion)

23.    Plaintiff's action against Aspen may be barred by the Business Enterprise Exclusion of the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Retroactive Date Exclusion)

24.     Plaintiff's action against Aspen may be barred by the retroactive date specified in the Aspen Excess Policy by endorsement and the Retroactive Date Exclusion of the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Profit Exclusion)

25.     Plaintiff's action against Aspen may be barred by the Profit Exclusion of the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Contractual Liability Exclusion)

26.     Plaintiff's action against Aspen may be barred by the Contractual Liability Exclusion of the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Prior Knowledge Exclusion)

27.     Plaintiff's action against Aspen may be barred by the Prior Knowledge Exclusion of the Indian Harbor Primary Policy and/or the Aspen Excess Policy.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Pre-Tender Defense Expenses)

28.     Plaintiff's action against Aspen is barred to the extent that Plaintiff seeks to recover pre-tender defense expenses, fees, costs, expenditures, or obligations.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Failure to Join Necessary Parties)

29.     Plaintiff's action may be barred in whole or in part, and any adjudication of the claims and allegations therein improper, to the extent that Plaintiff has failed to join all parties necessary and indispensable to this action.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## THIRTIETH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

30.     Plaintiff's Complaint, and each purported claim for relief stated within it, fails to state facts sufficient to constitute a cause of action against Aspen upon which relief can be granted.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Right to Amend)

31.     To the extent that the Complaint does not describe the events or claims alleged in it with sufficient particularity to enable Aspen to determine what defenses may exist to such events or claims, Aspen reserves the right to amend this answer, to assert additional affirmative and other defenses, and to supplement, alter or change this answer and these defenses upon discovery and investigation in this matter.

## **PRAYER FOR RELIEF**

WHEREFORE, Aspen respectfully prays judgment against Plaintiff as follows:

(1)     That the Court dismiss Plaintiff's causes of action against Aspen with prejudice and enter judgment in favor of Aspen;

(2)     That the Court award Aspen its costs incurred in connection with this action; and

(3)     That the Court award Aspen such other and further relief as the Court deems just and proper.

## **ASPEN AMERICAN INSURANCE COMPANY'S COUNTERCLAIM FOR DECLARATORY RELIEF**

Defendant and Counterclaimant Aspen American Insurance Company ("Aspen") alleges for its Counterclaim for Declaratory Relief against Plaintiff and Counter-Defendant Nigro Karlin Segal Feldstein & Bolno, LLC and Counter-Defendant Fred Nigro as follows:

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

# I.    **INTRODUCTION**

1.    This Counterclaim for Declaratory Relief seeks a declaration regarding the obligations of Aspen under an Excess Errors and Omissions Policy issued by Aspen to Nigro Karlin Segal Feldstein & Bolno, LLC ("NKSFB") in connection with claims asserted against NKSFB and Fred Nigro (NKSFB and Fred Nigro are collectively referred to as the "Nigro Parties").

# II.    **PARTIES**

2.    Defendant and Counterclaimant Aspen is a Texas corporation with its principal place of business in New York, New York.

3.    Plaintiff and Counter-Defendant NKSFB is a California limited liability company with its principal place of business in Los Angeles, California.

4.    Counter-Defendant Fred Nigro is, on information and belief, a citizen of California.  Fred Nigro is joined in this action as an additional party to Aspen's Counterclaim pursuant to Federal Rules of Civil Procedure 13, 19, and/or 20.

# III.    **THE POLICIES**

5.    Indian Harbor Insurance Company ("Indian Harbor") issued an Errors and Omissions Policy to NKSFB as named insured for the policy period of June 21, 2015 to August 20, 2016 (as extended by endorsement), policy number MPP003725403 (the "Indian Harbor Primary Policy").  The Indian Harbor Primary Policy has limits of liability of $5 million each claim and $5 million in the aggregate, subject to a $200,000 deductible.  Both the limits of liability and the deductible are inclusive of claim expenses.  A copy of the Indian Harbor Primary Policy is attached as Exhibit A.

6.    Aspen issued an Excess Follow Form Insurance Policy to NKSFB as named insured, policy number LX0011R15 (the "Aspen Excess Policy").  The Aspen Excess Policy identifies the Indian Harbor Primary Policy as the Followed Policy. The Aspen Excess Policy has limits of liability of $5 million per claim and $5 million in the aggregate, in excess of the Total Underlying Limits of $5 million per claim and

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

$5 million in the aggregate.  A copy of the Aspen Excess Policy is attached as Exhibit B.

7.     The Aspen Excess Policy states that it will provide insurance coverage to NKSFB "in accordance with the same terms, conditions, exclusions and limitations of the [Indian Harbor Primary Policy] (except as regards the premium, Limits of Liability or any endorsements attached to this Policy) as they existed on the inception date of this Policy, except as otherwise provided herein."  Further, "in no event shall [the Aspen Excess Policy] grant broader coverage than that provided by the [Indian Harbor Primary Policy]."

## IV.     THE CLAIMS

8.     On March 12, 2016, former clients (the "Former Clients")[1] of the Nigro Parties sent a demand letter to the attorneys for the Nigro Parties asserting claims against NKSFB and Fred Nigro.  The claims asserted in the March 12, 2016 Letter are referred to as the "Claims."

9.     The Claims included a wide range of allegations with respect to the actions or omissions of the Nigro Parties in a variety of capacities arising out of a relationship with the Former Clients that began in the 1970s.  This included claims against Fred Nigro for his actions as an employee and/or officer of the Former Clients. The Nigro Parties also later asserted certain claims against the Former Clients.

10.     Prior to and following the March 12, 2016 Letter, the Former Clients and the Nigro Parties exchanged correspondence regarding the Claims and held several meetings at which they presented their positions with respect to the Claims.

### A.     Tender to Indian Harbor and Aspen

11.     On information and belief, the Nigro Parties tendered the Claims to Indian Harbor on or about May 5, 2016.

---

[1] The identity of the Former Clients is not specified in this pleading pursuant to an agreement between the Nigro Parties and Aspen.

12. Prior to tendering the Claims to Indian Harbor, the Nigro Parties retained the law firm Glaser, Weil, Fink, Howard, Avchen & Shapiro, LLP and incurred defense expenses in connection with the Claims.

13. On July 14, 2016, Aspen received notice of the March 12, 2016 Letter.

14. On July 15, 2016, Aspen sent a letter to the Nigro Parties acknowledging receipt of the March 12, 2016 Letter.

15. On September 7, 2016, Aspen sent a letter to the Nigro Parties containing a reservation of Aspen's rights under the Aspen Excess Policy and incorporating the reservations of rights issued by Indian Harbor under the Indian Harbor Primary Policy, including a reservation of rights letter issued by Indian Harbor on June 27, 2016.

### B.    The September 19, 2016 Mediation

16. In July or August 2016, without first consulting either Indian Harbor or Aspen, the Nigro Parties agreed to a mediation of the Claims with the Former Clients. The mediation was eventually scheduled for September 19, 2016.

17. Aspen first received notice of the mediation on August 29, 2016.

18. Prior to the mediation, the Nigro Parties informed Aspen that it was acceptable for an Aspen representative to be available by telephone during the mediation. Accordingly, an Aspen representative informed the Nigro Parties that he would be available by telephone and provided the Nigro Parties with his contact information.

19. A mediation between the Former Clients and the Nigro Parties was held on September 19, 2016 in San Francisco, California.

20. Although available by telephone as agreed by the parties, the Aspen representative was not contacted on September 19, 2016.

21. At no point on or before September 19, 2016 did the Nigro Parties request Indian Harbor's or Aspen's consent to make any settlement offer or to enter into any agreement, and neither Indian Harbor nor Aspen otherwise provided its

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

consent to make a settlement offer or to enter into an agreement on or before September 19, 2016.

22.     Prior to the mediation, neither Indian Harbor nor Aspen had denied coverage for the Claims in whole or in part.  Instead, both Indian Harbor and Aspen had reserved their rights with respect to the Claims and Indian Harbor was providing a defense to the Nigro Parties subject to its reservation of rights.  In addition, Indian Harbor agreed to pay and paid the Nigro Parties' share of the mediator's fee.

## C.     The Settlement Agreement

23.     On September 21, 2016, the Nigro Parties informed Aspen (and Indian Harbor) that the Former Clients and the Nigro Parties had executed a settlement agreement on September 19, 2016.

24.     The Nigro Parties provided Aspen with a copy of a handwritten document entitled "Settlement Agreement" (the "Settlement Agreement"), as well as a typed version of that document.

25.     The Settlement Agreement was signed by Fred Nigro, NKSFB (through its Managing Partner Mickey Segal), and by the Former Clients.

26.     The Settlement Agreement provided that the Nigro Parties would pay the Former Clients a minimum amount of $11 million, including a minimum of $9 million from the Nigro Parties' insurers.  The Settlement Agreement further stated that the payment would be made on or before November 3, 2016, but that it was contingent on the Nigro Parties' insurers' approval and their payment of the "full amount of the full policy balance which shall be no less than $9 million, by November 3, 2016."

27.     Although the Settlement Agreement stated that it was contingent upon the insurers' approval, Paragraph 3 of the Settlement Agreement was not contingent upon the insurers' approval, and instead stated that "[e]ven if [the insurers do not approve the settlement] and the Settlement is terminated, the NKSFB Parties hereby irrevocably waive and release [their interest in certain property of the Former Clients]."

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

28.     Paragraph 7 of the Settlement Agreement further stated that "[t]he parties will enter into a more definitive written agreement regarding this matter.  Until such time, this Settlement Agreement shall be binding on the parties."

29.     Therefore, even if the insurers did not consent to the settlement, Paragraphs 3 and 7 were nonetheless binding and required the Nigro Parties to waive and release an interest in the Former Clients' property that purportedly had a value of over $10 million.

30.     As a result, the Settlement Agreement constitutes both an offer to settle and a binding agreement whereby the Nigro Parties assumed irrevocable obligations in connection with the Claims without first obtaining the consent of either Indian Harbor or Aspen.

31.     Further, upon information and belief, the Nigro Parties agreed that, even if the insurers did not consent to the settlement, the Nigro Parties would pay the amounts to be paid by the insurers under the terms of the Settlement Agreement.

32.     After executing the Settlement Agreement, the Nigro Parties demanded that Indian Harbor and Aspen pay their respective policy limits as set forth in the terms of the Settlement Agreement.

**D.     Aspen's Investigation and the Settlement of the Claims**

33.     After learning that the Nigro Parties had executed the Settlement Agreement without their consent, both Indian Harbor and Aspen immediately informed the Nigro Parties that they had breached the voluntary payments/consent to settle provisions of the Indian Harbor Primary Policy and the Aspen Excess Policy.

34.     Nonetheless, while maintaining a reservation of all of its rights with respect the Nigro Parties' execution of the Settlement Agreement without the consent of Indian Harbor or Aspen, Aspen requested information from the Nigro Parties relating to the Claims and, in October and November of 2016, engaged in an exhaustive analysis of the merits of the Claims (which included at least nineteen

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

separate claims) in order to evaluate whether the Settlement Agreement constituted a fair and reasonable compromise of the Claims.

35.     The Nigro Parties provided Aspen with certain information relating to the Claims in response to Aspen's requests.  However, the Nigro Parties rejected other requests by Aspen for information necessary to evaluate the Claims and the Settlement Agreement and otherwise interfered with Aspen's ability to investigate the basis for the Claims, including by refusing to allow Aspen to interview witnesses.

36.     On November 22, 2016, Indian Harbor sent a letter to the Nigro Parties and Aspen stating that, while its investigation was necessarily limited by the Nigro Parties' failure to provide certain information, it had concluded from the information provided by the Nigro Parties that the amounts to be received by the Former Clients under the Settlement Agreement did not appear to constitute a reasonable compromise of the Claims.  However, Indian Harbor nonetheless agreed to contribute its remaining policy limits towards the settlement of the Claims subject to its reservation of rights and specifically its right to seek recoupment.

37.     On November 22, 2016, Indian Harbor also sent the Nigro Parties a reservation of rights letter incorporating and supplementing its prior reservations of rights.

38.     On November 22, 2016, Aspen sent a letter to the Nigro Parties stating that, while its investigation was necessarily limited by the Nigro Parties' failure to provide certain information, it had also concluded that the Settlement Agreement did not present a reasonable settlement value for the Former Clients' claims.  Thus, Aspen did not agree to fund the amounts contemplated in the Settlement Agreement.

39.     On November 22, 2016, Aspen also sent the Nigro Parties a reservation of rights letter incorporating and supplementing its prior reservations of rights.

40.     On or about December 5, 2016, the Nigro Parties informed Aspen that it would pay $5 million to settle the Claims (in addition to the payment of the remaining

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

policy limits of the Indian Harbor Primary Policy) and then would seek that amount from Aspen.

41.     Accordingly, pursuant to 28 U.S.C. Sections 2201(a) and 2202, an actual controversy exists between the Nigro Parties and Aspen regarding their respective rights and obligations under the Aspen Excess Policy.

## FIRST CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Consent to Settle/Voluntary Payments Provision

42.     Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 41 as though fully set forth herein.

43.     The Indian Harbor Primary Policy, as amended by Endorsement No. 9, contains the following provision:

**1.      Reporting Requirements and Cooperation**
    **a.**     If the **Insured** becomes aware of a **claim**…, the **Insured** must: …
        **(6)**     not admit liability, make any offer of settlement or payments, incur any expense; or assume any obligation arising out of or in any way connected with a **claim**…without the **Company's** prior written consent.

44.     In addition, the Aspen Excess Policy states as follows:

**II.     DEFENSE AND SETTLEMENT**
…
The **Insured** shall not admit liability for, offer to settle or settle, any claim or incur any defense costs where the liability, settlement and/or defense costs are reasonably likely to involve the Limits of Liability of this Policy, without the **Insurer's** prior written consent.

The above-referenced provisions in the Indian Harbor Primary Policy and the Aspen Excess Policy are referred to as "Consent to Settle/Voluntary Payments" provisions.

45.     Prior to the execution of the Settlement Agreement on or about September 19, 2016, the Nigro Parties did not request nor obtain the consent of Indian Harbor or Aspen to make any offer of settlement or settle, or assume any obligation, arising out of or in any way connected with the Claims.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

46.    Paragraphs 1 through 3 of the Settlement Agreement contain an offer of settlement or payments and/or assume obligations arising out of or in any way connected with the Claims because they reflect an offer to settle the Claims in exchange for the payment of Indian Harbor's and Aspen's policy limits and further irrevocably provide for the Nigro Parties' relinquishment of certain rights at issue in the dispute between the Nigro Parties and Former Clients that forms the basis for the Claims.

47.    Further, although the Settlement Agreement states that the payment of the insurers' policy limits is contingent upon the insurers' approval, the Settlement Agreement is in fact a bargained-for agreement that obligates the Nigro Parties to release certain rights in exchange for the opportunity for Indian Harbor and Aspen to pay their policy limits on behalf of the Nigro Parties within a specified time period.

48.    The Nigro Parties' negotiation and execution of the Settlement Agreement thus constituted an offer of settlement, settlement, or assumption of an obligation "arising out of or in any way connected with" the Claims that occurred without the consent of Indian Harbor or Aspen.

49.    Aspen is therefore entitled to a judicial declaration that it owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims due to the Nigro Parties' breach of the Consent to Settle/Voluntary Payments provisions of both the Indian Harbor Primary Policy and the Aspen Excess Policy.

50.    In addition, prior to tendering the Claims to Indian Harbor, the Nigro Parties incurred defense expenses through the retention of Glaser, Weil, Fink, Howard, Avchen & Shapiro, LLP.  The Consent to Settle/Voluntary Payments Provision prohibits the insured from "incur[ring] any expense" in connection with a claim without Indian Harbor's consent.  The Nigro Parties are therefore not entitled to recover any defense costs or other expenses incurred prior to the tender of the Claims to Indian Harbor.

## SECOND CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Retroactive Date Exclusion

51.     Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 50 as though fully set forth herein.

52.     Endorsement No. 4 of the Aspen Excess Policy, entitled "Retroactive Date Non-Follow Form Endorsement," provides as follows, in relevant part:

> In consideration of the premium charged, it is agreed that this Policy shall not follow form to the Retroactive Date of the Followed Policy. The Retroactive Date applicable to this Policy is 04/02/2013.

53.     The Indian Harbor Primary Policy defines the term "Retroactive Date" as "the first date which will be considered for coverage under this policy for any act or omission in the performance of professional services."

54.     Exclusion H of the Indian Harbor Primary Policy (the "Retroactive Date Exclusion") provides as follows:

> This insurance does not apply to any **claim**:

> based on or arising out of acts or omissions which occurred or are alleged to have occurred prior to the **retroactive date** of this policy.

55.     The Claims are based on or arise out of acts or omissions that are specifically alleged to have occurred prior to April 2, 2013, including alleged acts or omissions that allegedly occurred as early as during the early 1990s.

56.     Because the Claims are based on or arise out of acts or omissions that occurred or are alleged to have occurred prior to April 2, 2013, the Retroactive Date Exclusion precludes coverage for the Claims under the Aspen Excess Policy.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## **THIRD CAUSE OF ACTION**

### **Declaratory Relief Under the Aspen Excess Policy**

### **Business Enterprise Exclusion**

57.   Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 56 as though fully set forth herein.

58.   Endorsement no. 5 of the Indian Harbor Primary Policy contains the following exclusion (the "Business Enterprise Exclusion"):

This insurance does not apply to any **claim**:

Based on or arising out of **professional services** performed for or by any business enterprise not named in Item 1. in the Declarations if on or after the date or time of the act or omission giving rise to such **claim:**

    1.    Any **Insured** controlled, owned, operated or managed such entity; or

    2.    Any **Insured** was an owner, partner, or employee of such entity. Control of or ownership in a business enterprise is presumed if any **Insured** owned or held 25% or more of the equity and/or debt instruments of such enterprise;

59.   Fred Nigro is or was an employee of the Former Clients.  In addition, Fred Nigro controlled, owned, operated or managed, or was an owner, partner, or employee, of the Former Clients and/or other entities not defined as the Named Insured at issue in the Claims.

60.   Accordingly, to the extent the Claims concern the "professional services" of the Nigro Parties, the Claims are based on or arise out of "professional services" performed for an entity or entities within the scope of the Business Enterprise Exclusion.

61.   The Business Enterprise Exclusion therefore precludes coverage for the Claims under the Aspen Excess Policy.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## FOURTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Insuring Agreement of the Indian Harbor Primary Policy

62.     Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 61 as though fully set forth herein.

63.     The insuring agreement of the Indian Harbor Primary Policy states as follows:

> Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged act or omission including **personal injury,** in the performance of **professional services.**

64.     The insuring agreement of the Aspen Excess Policy states as follows:

## I.     INSURING AGREEMENT

This Policy shall provide the **Insured** with insurance coverage for any claim, loss and/or occurrence in accordance with the same terms, conditions, exclusions and limitations of the **Followed Policy** referenced in Item 6. (A) of the Declarations (except as regards the premium, Limits of Liability or any endorsements attached to this Policy) as they existed on the inception date of this Policy, except as otherwise provided herein.

Notwithstanding any other provision of this Policy, in no event shall this Policy grant broader coverage than that provided by the **Followed Policy** or any of the **Underlying Policies**.

65.     The Declarations of the Aspen Excess Policy specify that the Indian Harbor Primary Policy is the Followed Policy.  Therefore, to the extent that no coverage is available under the terms of the Indian Harbor Primary Policy, coverage is also unavailable under the Aspen Excess Policy.

66.     The Indian Harbor Primary Policy defines the term "claim," in relevant part, as "a written demand received by the Insured for money, services, equitable relief."

67.     In addition, the Indian Harbor Primary Policy provides that "two or more claims…arising out of the same or related facts, circumstances, situations, transactions or events, or arising out of the same or related acts or omissions, will be considered a single claim first made on the earliest of the date that…the first such claim…was made, regardless of whether such date is before or during the policy period."

68.     Prior to the policy period of the Indian Harbor Primary Policy, the Former Clients made demands against the Nigro Parties, including demands that the Nigro Parties return a portion of their fees charged for services provided to the Former Clients.

69.     To the extent that the Claims are deemed a claim first made prior to the policy period of the Indian Harbor Primary Policy, no coverage is available under the Aspen Excess Policy.

70.     Further, to the extent the various claims asserted by the Former Clients constitute multiple claims, the Insured is required to satisfy a $200,000 per claim deductible for each claim.

71.     The Indian Harbor Primary Policy defines the term "insured" as follows, in relevant part:

> **Insured** means…any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor, leased employee of the **Named Insured** or a **subsidiary**, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured**.

72.     The Claims concern actions taken by Fred Nigro in the course and scope of his duties as an employee or officer of the Former Clients and/or other entities not defined as the Named Insured under either the Indian Harbor Primary Policy or the Aspen Excess Policy.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 23 -

73.     To the extent that the Claims concern actual or alleged actions or omissions taken by Fred Nigro or other individuals at NKSFB that were not rendered in the course and scope of their duties on behalf of the Named Insured, such individuals do not qualify as "insureds" and therefore the Aspen Excess Policy does not provide coverage to such individuals.

74.     The Indian Harbor Primary Policy defines the term "damages" as follows:

> **Damages** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including: statutory damages; punitive, multiplied or exemplary damages, where it is deemed permitted under the laws and public policy of the applicable jurisdiction by law; or pre-judgment and post-judgment interest. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf. However, **damages** does not include:
>
> a.   taxes, fines, penalties, forfeitures or court-imposed monetary sanctions;
> b.   the return, restitution, reduction, compromise or refund of commissions, fees, premiums, charges, gratuities or other compensation paid to an **Insured**;
> c.   the cost to correct, complete or re-perform any **professional services** or **media communication**;
> d.   the cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including services or injunctive relief; or
> e.   any amounts uninsurable as a matter of law or public policy;
> f.   **regulatory fines**; provided, however, notwithstanding the foregoing, solely with respect to What is Covered Privacy Liability Coverage Item 3.
>
> The terms "applicable jurisdiction" shall mean for the purposes of this endorsement that jurisdiction most favorable to the insurability of punitive or exemplary damages provided that the jurisdiction must be:
>
> a.   where the punitive or exemplary damages were awarded or imposed; or
> b.   where any act which forms the basis of the **Claim** took place; or

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

c.   where any "**Insured**" is incorporated, resides, or has its principal place of business.

75.   The Claims seek relief from the Nigro Parties that does not constitute "damages" as defined by the Indian Harbor Primary Policy, including relief in the form of the return of fees paid to the Nigro Parties and relief that is uninsurable under the applicable law.  Therefore, no coverage is available for such relief.

76.   The Indian Harbor Primary Policy defines the term "professional services" as follows:

> Professional Services: Solely in the performance of: Providing business management and accounting services, inclusing [sic] compilations, bookkeeping, tax preparation, tax consulting, trustee services, royalty inspections, health and benefit plan payroll compliance inspections, publishing administration, notary services, financial planning, investment advice, construction supervision; forensic accounting/litigation support; expert witness services, procuring insurance for clients through a broker; assisting clients with other insurance matters including medical billing; referring clients to other professionals; and content on www.nksfb.com<http://www.nksfb.com.

77.   The Claims concern actual or alleged acts or omissions that do not involve the Nigro Parties' performance of any of the services listed in the definition of "professional services."  Therefore, no coverage is available for such acts or omissions.

78.   Because the terms of the Indian Harbor Primary Policy as they existed on the inception date of the Aspen Excess Policy do not provide coverage for the Claims, there is no coverage available under the Aspen Excess Policy.

## FIFTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Profit Exclusion

79.   Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 78 as though fully set forth herein.

80.     Exclusion no. 8 of the Indian Harbor Primary Policy (the "Profit Exclusion") states as follows:

> This insurance does not apply to any **claim**:
> …
> based on or arising out of the actual or alleged gaining of any profit or advantage to which the Insured is not legally entitled

81.     The Claims allege that, during the course of the Nigro Parties' relationship with the Former Clients, the Nigro Parties obtained funds from the Former Clients to which the Nigro Parties were not legally entitled and obtained other benefits at the expense of the Former Clients to which the Nigro Parties were not legally entitled.

82.     Accordingly, because the Claims are based on or arise out of the actual or alleged gaining of a profit or advantage to which the Nigro Parties were not legally entitled, the Profit Exclusion precludes coverage for the Claims.

## SIXTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### (Insurance Code Sections 22, 250 and 533)

83.     Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 82 as though fully set forth herein.

84.     The Claims are based on or arise out of alleged intentional, willful, fraudulent or unlawful acts of the Nigro Parties including, for example, the alleged misappropriation of the Former Clients' funds.

85.     Coverage for the Claims is therefore barred pursuant to Insurance Code Sections 22, 250, and/or 533.

## SEVENTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Contractual Liability Exclusion

86.     Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 85 as though fully set forth herein.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

87.    Exclusion no. 13 of the Indian Harbor Primary Policy (the "Contractual Liability Exclusion") states as follows:

This insurance does not apply to any **claim**:

…

for the liability which the **Insured** assumed under any contract, agreement, promise, guarantee or warranty, whether written or oral, and whether express or implied, unless the Insured would have been legally liable in the absence of such contract, agreement, promise, guarantee or warranty;

88.    The Claims include claims for liability that the Nigro Parties assumed under written or oral contracts.  The Contractual Liability Exclusion therefore precludes coverage for the Claims.

## EIGHTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Prior Knowledge Exclusion

89.    Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 88 as though fully set forth herein.

90.    Endorsement no. 10 of the Indian Harbor Primary Policy contains the following exclusion (the "Prior Knowledge Exclusion"):

This insurance does not apply to any **claim**:

based on or arising out of acts or omissions that occurred or are alleged to have occurred prior to the earlier of:

a.    the effective date of this policy; or

b.    January 1, 2007 and continuously renewed of which this policy is the last in the series of continuously renewed policies;

if, on or prior to such date, any Insured knew or had a reasonable basis to believe either that a duty had been breached or that a claim might be made;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

91.     The dispute between the Nigro Parties and the Former Clients at issue in the Claims began prior to January 1, 2007.

92.     The Claims are therefore based on or arise out of acts or omissions for which the Nigro Parties knew or had a reasonable basis to believe either that a duty had been breached or that a claim might be made prior to January 1, 2007.  The Prior Knowledge Exclusion therefore precludes coverage for the Claims.

## NINTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Other Insurance

93.     Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 92 as though fully set forth herein

94.     The Indian Harbor Primary Policy's "Other Insurance" provision states as follows:

> Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess and so evidenced by reference to this policy number.

95.     The Nigro Parties and the Former Clients procured other insurance policies, including a directors and officers liability insurance policy, that provide coverage or potentially provide coverage for the Claims.

96.     Accordingly, to the extent that there is other insurance available to the Nigro Parties, the Indian Harbor Primary Policy is in excess of such insurance and therefore the Aspen Excess Policy is not implicated.

## TENTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### Cooperation Clause

97.     Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 96 as though fully set forth herein.

98.     The Indian Harbor Primary Policy, as amended by Endorsement No. 9, contains the following provision:

**1.      Reporting Requirements and Cooperation**

    **a.**     If the **Insured** becomes aware of a **claim**…, the **Insured** must:

    …**(3)** send the **Company** documents relating to the **claim**…when requested;

    **(4)** cooperate with the **Company** and defense counsel in the investigation, defense and settlement of a **claim**…and enforcement of contribution or indemnification actions against others;

99.     In addition, the Aspen Excess Policy states as follows:

**II.     DEFENSE AND SETTLEMENT**

The **Insurer** shall have the right, but not the duty, and shall be given the opportunity, to effectively associate with the **Insured** in the investigation, settlement or defense of any claim that is reasonably likely to involve the Limits of Liability of this Policy…

100.   The Nigro Parties breached the aforementioned provisions in the Indian Harbor Primary Policy and the Aspen Excess Policy by failing to apprise Indian Harbor and Aspen of settlement discussions with the Former Clients and by failing to obtain Indian Harbor and Aspen's consent prior to making any settlement offers or entering into the Settlement Agreement.

101.   The failure of the Nigro Parties to cooperate with Indian Harbor and Aspen in connection with the settlement negotiations with the Former Clients and the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

execution of the Settlement Agreement caused prejudice to Indian Harbor and Aspen because, among other reasons, the settlement entered into by the Nigro Parties was not a reasonable compromise of the Claims.

102.   In addition, the Nigro Parties also breached the aforementioned provisions by obstructing Indian Harbor and Aspen's investigation and evaluation of the Claims, including by obstructing Indian Harbor and Aspen's ability to interview witnesses and to pursue contribution and indemnification actions against others.

103.   No coverage is available for the Claims due to the Nigro Parties' breach of the Cooperation Clause of the Indian Harbor Primary Policy and breach of their obligation to allow Aspen to effectively associate in the investigation, defense, and settlement of the Claims.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief Under the Aspen Excess Policy

### No Duty to Indemnify for an Unreasonable Settlement

104.   Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 103  as though fully set forth herein.

105.   After investigation, Indian Harbor concluded that the Settlement Agreement did not represent a reasonable compromise of the Claims but nonetheless agreed to contribute the remainder of its $5 million policy limits pursuant to a reservation of rights in recognition of the potential liability of the Nigro Parties and accounting for reasonable defense costs.

106.   Aspen likewise concluded from its analysis and the information provided by the Nigro Parties that the Settlement Agreement did not represent a reasonable compromise of the Claims.  Specifically, the amounts to be paid to the Former Clients did not accurately reflect the Nigro Parties' liability for the Claims.

107.   Accordingly, because the settlement agreement entered into by the Nigro Parties was not a reasonable compromise of the Claims, Aspen is entitled to a declaration that it had no duty to indemnify the Nigro Parties for the settlement of the

Claims and/or has no duty to reimburse the Nigro Parties for any amounts paid by the Nigro Parties to settle the Claims.

## TWELFTH CAUSE OF ACTION

### Declarative Relief

### No Entitlement to Prejudgment Interest

108.   Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 107  as though fully set forth herein.

109.   The Nigro Parties, Indian Harbor, and Aspen entered into a binding written agreement with respect to the settlement of the Claims and the resolution of disputes regarding insurance coverage (the "Nigro Parties-Insurers Agreement").

110.   Pursuant to the terms of the Nigro Parties-Insurers Agreement, the Nigro Parties agreed to release any claim for damages in excess of the policy limits of the Aspen Excess Policy, except to the extent the Nigro Parties are entitled to attorney's fees pursuant to the decision of the Supreme Court of California in *Brandt v. Superior Court*, 37 Cal. 3d 813, 693 P.2d 796 (1985).

111.   Specifically, the Nigro Parties-Insurers Agreement provides that any judicial proceeding in which the Nigro Parties, Indian Harbor, or Aspen seek resolution of Indian Harbor's or Aspen's obligations in connection with the Claims shall be limited to the following issues, in relevant part: (1) Aspen's coverage obligations under the Aspen Excess Policy; (2) Aspen's obligation to pay its $5 million limits (or any portion thereof) toward the settlement of the Claims; (3) the reasonableness of the settlement of the Claims as agreed to by the Nigro Parties; and (4) in the event that the Nigro Parties prevail, whether the Nigro Parties are entitled to *Brandt* fees (should California law apply).

112.   The Nigro Parties-Insurers Agreement further provides that, except as listed in the preceding paragraph, the Nigro Parties release Aspen from, in relevant part, any and all liability for, or relating to and arising out of, the Claims, including "damages…of any kind whatsoever."

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

113.   In its Complaint filed in this action, NKSFB seeks damages in the form of prejudgment interest.

114.   Because prejudgment interest is a form of damages that was released by the Nigro Parties under the terms of the Nigro Parties-Insurers Agreement, Aspen is entitled to a declaration that the Nigro Parties cannot obtain relief in the form of prejudgment interest.

### THIRTEENTH CAUSE OF ACTION

**Breach of Contract**

**The Nigro Parties-Insurers Agreement**

**(Against NKSFB Only)**

115.   Aspen hereby realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 114  as though fully set forth herein.

116.   The Nigro Parties-Insurers Agreement constitutes a binding written agreement entered into by the Nigro Parties, Indian Harbor, and Aspen.

117.   Pursuant to the terms of the Nigro Parties-Insurers Agreement, the Nigro Parties agreed to release any claim for damages in excess of the policy limits of the Aspen Excess Policy, except to the extent the Nigro Parties are entitled to attorney's fees pursuant to the decision of the Supreme Court of California in *Brandt v. Superior Court*, 37 Cal. 3d 813, 693 P.2d 796 (1985).

118.   Specifically, the Nigro Parties-Insurers Agreement provides that any judicial proceeding in which the Nigro Parties, Indian Harbor, or Aspen seek resolution of Indian Harbor's or Aspen's obligations in connection with the Claims shall be limited to the following issues, in relevant part: (1) Aspen's coverage obligations under the Aspen Excess Policy; (2) Aspen's obligation to pay its $5 million limits (or any portion thereof) toward the settlement of the Claims; (3) the reasonableness of the settlement of the Claims as agreed to by the Nigro Parties; and (4) in the event that the Nigro Parties prevail, whether the Nigro Parties are entitled to *Brandt* fees (should California law apply).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

119.   The Nigro Parties-Insurers Agreement further provides that, except as listed in the preceding paragraph, the Nigro Parties release Aspen from, in relevant part, any and all liability for, or relating to and arising out of, the Claims, including "damages…of any kind whatsoever."

120.   In its Complaint filed in this action, NKSFB seeks damages in the form of prejudgment interest.

121.   Under the terms of the Nigro Parties-Insurers Agreement, NKSFB released any claim for prejudgment interest against Aspen and further agreed that any action against Aspen would be limited to certain issues, none of which include a claim for prejudgment interest.  Accordingly, by seeking prejudgment interest, NKSFB breached the Nigro Parties-Insurers Agreement.

122.   Aspen has suffered and will suffer damages as a result of NKSFB's breach of the Nigro Parties-Insurers Agreement, including in the form of the amounts incurred in defending against NKSFB's claim for prejudgment interest.

### RELIEF REQUESTED

WHEREFORE, Aspen requests the following relief:

A.   As for the First Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

B.   As for the Second Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

C.   As for the Third Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

D.   As for the Fourth Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 33 -

E.     As for the Fifth Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

F.     As for the Sixth Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

G.     As for the Seventh Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

H.     As for the Eighth Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

I.     As for the Ninth Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

J.     As for the Tenth Cause of Action, a declaration that Aspen owes no coverage obligations to the Nigro Parties under the Aspen Excess Policy in connection with the Claims;

K.     As for the Eleventh Cause of Action, a declaration that Aspen had no duty to indemnify the Nigro Parties for the settlement agreement executed by the Nigro Parties resolving the Claims and/or Aspen has no duty to reimburse the Nigro Parties for amounts paid by the Nigro Parties to settle the Claims;

L.     As for the Twelfth Cause of Action, a declaration that the Nigro Parties are not entitled to prejudgment interest under the Nigro Parties-Insurers Agreement;

M.     As for the Thirteenth Cause of Action, for damages caused by NKSFB's breach of the Nigro Parties-Insurers Agreement;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

N.    For costs of suit incurred herein; and

For such other and further relief as the Court may deem just and proper

Dated:  February 8, 2017          DENTONS US LLP


By:  /s/ Shari L. Klevens
     Shari L. Klevens


Attorneys for Defendant and Counterclaimant
Aspen American Insurance Company

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300