# EXHIBIT A



XL Select Professional
Wellington Centre
14643 Dallas Parkway, Suite 770
Dallas, TX 75254
USA
Phone      +1 972-383-7150
Fax         +1 972-383-7180
www.xlinsurance.com

June 25, 2015

Mr. Matt Jones
Swett & Crawford of Georgia, Inc.
16100 N. 71st St., Suite 150
Scottsdale, AZ 85254

RE:    Nigro Karlin Segal & Feldstein LLP
        Policy Number : MPP003725403

Dear Matt:

We are pleased to enclose an original and one (1) copy of the above captioned policy.

Thank you for placing your insurance coverage with XL Select Professional.  We at XL Select Professional feel that a key element of service to our brokers and insureds is efficient claims handling.

Enclosed please find instructions that should be followed in the event of a claim.  Should any problems or questions arise concerning claims reporting procedures, you may contact XL Select Professional Claims Administrators, Inc. at 1-800-432-2481.

Thank you for considering our office.

Sincerely,

Marcia Blanco
Vice President
XL Select Professional

Enclosures

WINS ACCOUNT # 0005208127

EXHIBIT A
Page 36



## XL SELECT PROFESSIONAL

Please be advised that the following replaces the claims reporting address in the CONDITIONS section, part A. Reporting of Claims and Potential Claims of this Policy:

<u>via email:</u>

proclaimnewnotices@xlgroup.com

**OR**

<u>via regular mail:</u>

XL Insurance
PO Box 614002
Orlando, FL 32861-4002

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 37

# NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The XL America, Inc. insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies.  The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you.  We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so.  The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim.  In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit.  We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

<u>Retention and Correction of Personal Information</u>

We retain personal information only as long as required by our business practices and applicable law.  If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

<u>Storage of Personal Information</u>

We have in place safeguards to protect data and paper files containing personal information.

<u>Sharing/Disclosing of Personal Information</u>

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law.  Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party.  Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.  "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc.  We also do not disclose to any unaffiliated third party a policy or account number for use in marketing.  We may share with our affiliated companies information that relates to our experience and transactions with the customer.

<u>Policy for Personal Information Relating to Nonpublic Personal Health Information</u>

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed.  However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

<u>Access to Your Information</u>

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you.  We may also disclose information about you to the following categories of person or entities:

EXHIBIT A
Page 39

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

<u>Violation of the Privacy Policy</u>

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State.  **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons*.  This list can be found on the U.S. Department of the Treasury's web site - http//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government.  Business transactions with any of these entities are expressly prohibited.  These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran.* This list can be found on the U.S. Department of the Treasury's web site - http://www.treas.gov/offices/enforcement/lists/

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC.  When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 1010

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©2010 X.L. America, Inc.  All rights reserved.  May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 41

## NOTICE TO POLICYHOLDERS

**IMPORTANT INFORMATION TO POLICYHOLDERS - CALIFORNIA**

In the event you need to contact someone about this Policy for any reason please contact your agent.  If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

> XL Insurance
> Seaview House
> 70 Seaview Avenue
> Stamford, CT  06902-6040
> 1-800-622-7311

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

> California Department of Insurance
> Consumer Communications Bureau
> 300 South Spring Street, South Tower
> Los Angeles, CA  90013
>
> 1-800-927-4357
> 213-897-8921 (if calling from within the Los Angeles area)
> 1-800-482-4833 (TDD Number)

Written correspondence is preferable so that a record of your inquiry can be maintained.  When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

© 2011 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 42

## NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 43

| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. |
|---|---|
| | **All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation. |
| | **Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime. |
| | The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. |
| | **Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2013 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 45

# CALIFORNIA

## SURPLUS LINES NOTICE:

1. **THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

2. **THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

3. **THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

4. **THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER 800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL**

PN CA 05 0312            Page 1

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 46

NOTICE TO POLICYHOLDERS

INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT www.naic.org.

5.  FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6.  FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7.  CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: www.insurance.ca.gov.

8.  IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE,

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 47

# NOTICE TO POLICYHOLDERS

**YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.**

PN CA 05 0312

Page 3

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 48

**Regulatory Office**
Indian Harbor Insurance Company
505 Eagleview Blvd. Suite 100
Dept: Regulatory
Exton, PA 19341-0636
Telephone: 800-688-1840

# ERRORS AND OMISSIONS POLICY DECLARATIONS

**PRODUCER:**   Swett & Crawford of Georgia, Inc.         **PRODUCER NO.:**   01085
16100 N. 71st St., Suite 150
Scottsdale, AZ 85254

**POLICY NO.:**   MPP003725403         **RENEWAL OF:**   MPP003725402

**THIS IS A CLAIMS MADE AND REPORTED POLICY. DEFENSE EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY.**

**Item 1.    NAMED INSURED:**   NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001

**Item 2.    ADDRESS:**                   10960 WILSHIRE BOULEVARD
                        5TH FLOOR
    City/State/Zip Code:    LOS ANGELES, CA 90024

**Item 3.    POLICY PERIOD:**

    FROM:   June 21, 2015             TO:   June 21, 2016
        12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein.

**Item 4.    Limits of Liability (Inclusive of Claim Expenses):**
        $   5,000,000         Each Claim
        $   5,000,000         In the Aggregate

**Item 5.    DEDUCTIBLE (Inclusive of Claim Expenses):**
        $   200,000         SIR
        $   N/A         Policy Aggregate, if applicable

**Item 6.    PREMIUM:**   $   274,018

**Item 7.    PROFESSIONAL SERVICES:**

Solely in the performance of: Providing business management and accounting services, inclusing compilations, bookkeeping, tax preparation, tax consulting, trustee services, royalty inspections, health and benefit plan payroll compliance inspections, publishing administration, notary services, financial planning, investment advice, construction supervision; forensic accounting/litigation support; expert witness services, procurring insurance for clients through a broker; assisting clients with other insurance matters includingmedical billing; referring clients to other professionals; and content on www.nksfb.com<http://www.nksfb.com

**Item 8.    RETROACTIVE DATE (if applicable):**    Full Prior Acts; 02/24/2006 - RHF Management Services, LLC

**Item 9.    ENDORSEMENTS ATTACHED AT POLICY EFFECTIVE DATE:**

| Endorsement Number | Endorsement Form Number | Endorsement Title |
|---|---|---|
| | XLSP-MPL-PF | Errors And Omissions Insurance |
| | PN CW 02 05 05 | Notice To Policyholders - Privacy Policy |
| | PN CW 05 1010 | Notice To Policyholders - U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") |
| | PN CA 02 0511 | Notice to Policyholders - Important Information to Policyholders - California |
| | PN CW 01 0613 | Notice To Policyholders - Fraud Notice |
| | PN CA 05 0312 | California - Surplus Lines Notice |
| | IL MP 9104 0314 IHIC | In Witness - Indian Harbor Insurance Company |
| Endorsement No. 001 | XLSPMPL159 0312 | Named Insured Endorsement |
| Endorsement No. 002 | XLSPMPL105 0312 | Amendatory Endorsement |
| Endorsement No. 003 | XLSPMPL105 0312 | Amendatory Endorsement |
| Endorsement No. 004 | XLSPMPL105 0312 | Amendatory Endorsement |
| Endorsement No. 005 | XLSPMPL105 0312 | Amendatory Endorsement |
| Endorsement No. 006 | XLSPMPL105 0312 | Amendatory Endorsement |
| Endorsement No. 007 | XLSPMPL161 0612 | Continuity Coverage |
| Endorsement No. 008 | XL-CASOP 11 10 | Service of Process |

© 2014 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 50

**SELECT PROFESSIONAL**

**ERRORS AND OMISSIONS INSURANCE**

**THIS IS A CLAIMS MADE AND REPORTED POLICY. DEFENSE EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY.**

### A. DEFINITIONS

Whenever used in this policy, the term:

1. **Claim** means a written demand received by the **Insured** for money, services, equitable relief or a request to toll or waive any applicable statute of limitations; provided, however, **claim** does not include any investigation, proceeding or prosecution initiated by any governmental, administrative, regulatory or prosecutorial authority.

2. **Company** means the insurance company named in the Declarations.

3. **Damages** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including: statutory damages; punitive, multiplied or exemplary damages, where insurable by law; or pre-judgment and post-judgment interest.  **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf. However, **damages** does not include:

   a. taxes, fines, penalties, forfeitures or court-imposed monetary sanctions;
   b. the return, restitution, reduction, compromise or refund of commissions, fees, premiums, charges, gratuities or other compensation paid to an **Insured**;
   c. the cost to correct, complete or re-perform any **professional services**;
   d. the cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including services or injunctive relief; or
   e. any amounts uninsurable as a matter of law or public policy.

4. **Defense expenses** means:

   a. reasonable and necessary fees charged and expenses incurred by attorneys designated by the **Company** to represent the **Insured**;

   b. all other reasonable and necessary fees, costs and expenses incurred at the **Company's** request;

   c. premiums on appeal bonds, attachment bonds or similar bonds however, the **Company** is not obligated to apply for or furnish such bonds.

   **Defense expenses** do not include salaries, compensation or overhead paid or incurred by the **Company** or by the **Insured**.

5. **Disciplinary action** means an action brought against the **Insured** by any regulatory agency, disciplinary board, peer review committee or similar entity alleging misconduct in providing **professional services. Disciplinary action** does not include criminal investigations or charges.

6. **Insured** means:

   a. the **Named Insured**;

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 51

    **b.** any **subsidiary**;

    **c.** any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor, leased employee of the **Named Insured** or a **subsidiary**, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured;**

    **d.** the representatives of the estate of a deceased **Insured** but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary**;

    **e.** the guardian, trustee or other fiduciary of a bankrupt **Insured** or an **Insured** who has been judicially declared incompetent, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary; and**

    **f.** the lawful spouse of an **Insured** solely by reason of (a) such spousal status, domestic partner status or (b) such spouse's or domestic partner's ownership interest in property or assets that are sought as recovery for such **claim**.  Any sums for which such spouse or domestic partner becomes legally obligated to pay on account of such **claim** shall be deemed **damages**.

**7.**  **Named Insured** means the person or entity designated in the Declarations as **Named Insured**.

**8.**  **Personal injury** means malicious prosecution, abuse of process, defamation, false imprisonment, wrongful eviction, libel, slander or violation of a person's right of privacy.

**9.**  **Policy period** means the period from the effective date and time of this policy to the policy expiration date and time as set forth in the Declarations, unless the policy is terminated earlier, in which event the **policy period** shall end on the date, and time, of such earlier termination.

**10.**  **Professional Services** means those services specified in Item 7. in the Declarations performed by an **Insured** for others for a fee or other remuneration inuring to the benefit of the **Named Insured**.

**11.**  **Retroactive Date** shown in the Declarations is the first date which will be considered for coverage under this policy for any act or omission in the performance of **professional services**.

**12.**  **Subsidiary** means any entity which the **Named Insured** maintains a majority interest.  Any entity that becomes a **subsidiary** during the **policy period** and whose annual gross revenue exceeds 15% of the **Named Insured's** gross revenue listed in the application for this policy will be considered an **Insured** only after notice to the **Company** within sixty (60) days of such transaction and any adjustment to the premium or terms and conditions have been agreed by the **Named Insured** and endorsed by the **Company**.

## B.  WHAT IS COVERED

Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged act or omission including **personal injury**, in the performance of **professional services**.

## C.  SUPPLEMENTARY PAYMENTS

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

1. **Defense of Disciplinary Actions**

   The **Company** will pay up to $25,000 per **policy period** for the defense of **disciplinary actions** brought against the **Insured** and reported to the **Company** during the **policy period**. The Deductible is not applicable and payments will not reduce the Limits of Liability.

2. **Subpoena Expenses**

   The **Company** will pay up to $7,500 per **policy period** for expenses incurred in assisting the **Insured** in responding to a subpoena which is received and reported in writing to the **Company** during the **policy period** and relates to **professional services.**  The Deductible is not applicable and payments will not reduce the Limits of Liability.

3. **Other Payments**

   The **Company** will reimburse the **Insured** for actual loss of earnings and reasonable expenses incurred for attendance at trial, court-ordered hearings, depositions, arbitration or mediation at the **Company's** request. The **Company** will pay actual expenses incurred but limited to $500 per day, $7,500 per **claim** and $25,000 per **policy period**. The Deductible is not applicable and payments will not reduce the Limits of Liability.

## D.  DEFENSE AND SETTLEMENT

The **Company** will have the right and duty to defend all covered **claims** brought in the United States, its territories and possessions**.** While the **Company** may seek the **Insured's** input in selecting defense counsel, the **Company** retains the right to make that selection.

Subject to the **Company's** guidelines, the **Insured** and not the **Company** will have the duty to investigate and defend all **claims** brought outside of the United States of America, its territories and possessions. Payment by the **Company** of covered **defense expenses** with respect to any such **claims** shall be subject to compliance by the **Insured** and the **Insured's** selected defense counsel with the **Company's** reasonable guidelines.

The **Company's** obligation to defend and/or pay any **damages** or **defense expenses** will cease when the Limit of Liability has been exhausted.

The **Company** will not settle any **claim** without the **Insured's** consent.  If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claiming party, and the opportunity to effectuate that settlement is lost, then the **Company's** liability for that **claim** will not exceed the lesser of the lost settlement amount plus fifty percent (50%) of **damages** and **defense expenses** incurred by the **Insured** in excess of the lost settlement amount, or the remaining Limits of Liability.

## E.  LIMITS OF LIABILITY

1. For each **claim**, the limit shown in the Declarations as per **claim** is the maximum amount the **Company** is obligated to pay for the combined total of all covered **damages** and **defense expenses** arising out of each **claim** first made during the **policy period.**

2. Subject to the per **claim** limitation above, the limit shown in the Declarations as Aggregate is the maximum amount the **Company** is obligated to pay for the combined total of all **damages** and **defense expenses** arising out of any and all **claims** first made during the **policy period**.

3. Payment of **defense expenses** as well as **damages** reduce and may exhaust the Limits of Liability.

## F.  DEDUCTIBLE

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

The **Company's** obligation to pay **defense expenses** and **damages** for each **claim** is triggered when the **Insured** has paid **defense expenses** and/or **damages** in an amount equal to the Deductible shown in the Declarations.

If the **Insured** purchases an Aggregate Deductible option, the **Company's** obligation to pay **defense expenses** and **damages** is triggered when the **Insured** has paid the amount designated in the Declarations as Aggregate Deductible regardless of the number of **claims** made and covered by this policy.

## G.  EARLY CLAIM RESOLUTION INCENTIVE

If the **Company** resolves a **claim** as reflected in a settlement agreement, order, dismissal  or judgment, within one (1) year following the date that the **claim** is reported in writing to the **Company**, the **Named Insured** will be reimbursed or credited up to 50% of the Deductible they have paid for that **claim**. The maximum reimbursement or credit is $25,000 per **policy period**.

## H.  EXCLUSIONS

This insurance does not apply to any **claim**:

1.  based on or arising out of acts or omissions that occurred or are alleged to have occurred prior to the effective date of this policy if, on or prior to such date, any **Insured** knew or had a reasonable basis to believe either that a professional duty had been breached or that a **claim** might be made;

2.  based on or arising out of acts or omissions which occurred or are alleged to have occurred prior to the **retroactive date** of this policy;

3.  based on or arising out of actual or alleged violation of:

    a.  the Employee Retirement Income Security Act of 1974;
    b.  the Securities Act of 1933;
    c.  the Securities Exchange Act of 1934;
    d.  any state Blue Sky or securities law;
    e.  the Crime Control Act of 1970 (also known as the Racketeer Influenced and Corrupt Practices Act or RICO);

    or any rules, regulations or amendments in relation to such acts, or any similar state, federal or foreign statutes or regulations, including any **claim** based upon common law principles of liability pertaining to the same subject matter as the above-mentioned acts, laws or regulations;

4.  for actual or alleged bodily injury, physical harm, sickness or death of any person;

5.  for the actual or alleged destruction, diminution in value or loss of use of tangible property;

6.  based on or arising out of, or made by or against any business enterprise not named in the Declarations:

    a.  which any **Insured** controlled or in which any **Insured** maintained a pecuniary interest at the time of the act, or omission giving rise to the **claim**; or

    b.  which arises out of any **Insured's** acts or omissions in an **Insured's** capacity as an officer, director, partner or employee of such enterprise;

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 54

For the purposes of this Exclusion, a pecuniary interest will be deemed to exist in any enterprise in which the **Insureds**, individually or collectively, maintain fifteen percent (15%) or more of the equity, debt or other instruments of ownership or control in such enterprise.

**7.** by or on behalf of an **Insured** against another **Insured**;

**8.** based on or arising out of the actual or alleged gaining of any profit or advantage to which the **Insured** is not legally entitled;

**9.** based on or arising out of alleged criminal, intentionally wrongful, fraudulent or malicious acts or omissions. The **Company** will provide a defense for such **claims** through judgment or final adjudication.

**10.** based on or arising out of any discrimination, humiliation, harassment, or misconduct including but not limited to **claims** based on an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference. The **Company** will provide a defense of such **claims** through judgment or final adjudication.

Exclusions 9. and 10 will not apply to any **Insured** who: (a) did not participate or acquiesce in such act or omission; (b) had no knowledge of or reason to suspect such act or omission; and (c) immediately notified the **Company** in writing after obtaining knowledge of such act or omission.

**11.** based on or arising out of any actual or alleged anti-trust law violation or any agreement or conspiracy to restrain trade;

**12.** based on or arising out of or related to any actual or alleged misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

**13.** for the liability which the **Insured** assumed under any contract, agreement, promise, guarantee or warranty, whether written or oral, and whether express or implied, unless the **Insured** would have been legally liable in the absence of such contract, agreement, promise, guarantee or warranty;

**14.** based on or arising out of actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time. This includes any loss, cost or expense arising out of any requested, demanded, ordered or voluntary, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of a pollutant. Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**I. ADDITIONAL TERMS AND CONDITIONS**

    **1. Reporting Requirements and Cooperation**

        **a.** If the **Insured** becomes aware of a **claim,** the **Insured** must:

            **(1)** advise the **Company** immediately in writing, giving the **Company** all details including the specific act or omission; the injury or damage which has or may result from such act or omission; the circumstances by which the **Insured** first became aware of the act or omission; and, the names, addresses and telephone numbers of all persons who may have knowledge or relevant information;

            **(2)** preserve all documents and other evidence relating to the **claim**;

            **(3)** send the **Company** documents relating to the **claim** when requested;

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

**EXHIBIT A**
*Page 55*

    **(4)** cooperate with the **Company** and defense counsel in the investigation, defense and settlement of a **claim** and enforcement of contribution or indemnification actions against others;

    **(5)** attend hearings, depositions, and trials if requested; and

    **(6)** not admit liability, make any offer of settlement or payments, incur any expense; or assume any obligation arising out of or in any way connected with a **claim** without the **Company's** prior written consent.

**b.** If, during the **policy period**, the **Insured** becomes aware of an act or omission in the performance of **professional services** that reasonably may be expected to give rise to a **claim**, and if, during the **policy period**, the **Insured** reports to the **Company** in writing: (1) such specific act or omission and the identity of each person and entity responsible for such act or omission; (2) the date on which such act or omission took place; (3) the injury which has or may result from such act or omission and the identity of each person and entity subject to such injury; and (4) the circumstances by which the **Insured** first became aware of such act or omission; then, any **claim** subsequently made arising out of such specific act or omission shall be deemed to be a **claim** made during the **policy period**.

**2.   Claim Reporting Grace Period**

If a **claim** is first made against any **Insured** during the **policy period,** the **Insured** may report it to the **Company** in writing up to and including sixty (60) days following the cancellation, non-renewal or natural expiration of this policy and the **Company** will consider it for coverage as if the **Insured** had reported it in writing to the **Company** within the **policy period**, provided the **Insured** is in compliance with all the terms and conditions of this policy, including payment of all premiums and Deductibles.

**3.   Multiple Claims**

Two or more **claims** arising out of the same or related facts, circumstances, situations, transactions or events, or arising out of the same or related acts or omissions, will be considered a single **claim** first made on the earliest of the date that:

**a.** the first such **claim** was made , regardless of whether such date is before or during the **policy period;** or

**b.** any of the acts or omissions alleged in such **claim(s)** was first reported under this or any prior policy of insurance, regardless of whether such policy was issued by the **Company**.

**4.   Other Insurance**

Such insurance as is provided by this policy shall be excess of any other valid and collectible insurance, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically as excess and so evidenced by reference to this policy number.

**5.   Representations**

The **Insured** understands and acknowledges that the decision to issue this policy was based upon the information provided in the application, including any supplements, attachments and replies to underwriter's inquiries. The **Insured** represents and warrants that all such information is true, accurate and complete.

**6.   Extended Claim Reporting Option**

If the **Insured** or the **Company** cancels or does not renew this policy, the **Named Insured** shall have the option to purchase an Extended Claim Reporting Endorsement (ERP), extending the period of time during

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 56

which **claims** may be reported but only with respect to **claims** arising out of **professional services** rendered prior to the end of the **policy period** and otherwise covered by this policy.

The **Named Insured** may purchase such ERP only if:

**a.** prior to the end of the **policy period**, the **Named Insured** was in compliance with all the terms and conditions of this policy, including payment of all premiums and deductibles when due;

**b.** the **Named Insured** agrees that the additional premium paid for the ERP is non-refundable;

**c.** the **Named Insured** made no material misrepresentation in the application, any supplements, attachments or replies to underwriter's inquiries; and

**d.** the **Named Insured** exercises this option and pays the additional premium within sixty (60) days following the end of the **policy period**.

The additional premium for an ERP shall be: (a) seventy-five percent (75%) of the annual premium for a one-year ERP; or (b) one hundred (100%) of the annual premium for a two-year ERP; or one hundred and fifty (150%) of the annual premium for a three-year ERP.

**7. Cancellation/Nonrenewal**

The **Named Insured** or the **Company** can cancel this policy by notifying the other in writing.

If the **Company** cancels or non-renews this policy, a written notice of cancellation or non-renewal will be sent to the **Named Insured** at the address shown in the Declarations. The notice will state the date on which the cancellation or non-renewal will become effective. The effective date of cancellation or non-renewal will be not less than sixty (60) days after notice is mailed to the **Named Insured** unless cancellation is for non-payment of premium in which case the effective date of cancellation will be not less than ten (10) days after notice is mailed. The effective date of cancellation or non-renewal as stated therein will become the end of the **policy period** and return premium will be calculated on a pro rata basis.

If the **Named Insured** cancels, the return premium will be calculated at the industry standard short rate.

**8. Non-Waiver**

The **Company's** failure to enforce any terms, provisions or conditions, or the **Company's** failure to exercise any right or privilege, shall not operate or be construed as a waiver of any other terms, provisions, conditions, rights or privileges.

**9. Named Insured as Sole Agent**

The first **Named Insured** in Item 1. in the Declarations is the sole agent and will act on behalf of all of **Insureds.**

**10. Changes in Control**

If, during the **policy period,** any of the following events occur:

**a.** the acquisition of any **Named Insured**, or all or substantially all of its assets, by another entity or the merger or consolidation of any **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

XLSP-MPL-PF 0312

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

EXHIBIT A
Page 57

**b.** the appointment of a receiver, conservator, trustee, liquidator or rehabilitator, or any similar official, for or with respect to any **Named Insured**;

this policy will continue in full force and effect with respect to **Claims** arising out of **professional services** rendered before such event. **Claims** arising out of **professional services** rendered after such event will not be considered for coverage.

After either such event, this policy may not be canceled and the entire premium will be deemed fully earned.

**11. Assignment**

The **Insured's** interests under this policy may not be assigned without the **Company's** written consent.

**12. Territory**

This policy applies to **claims** arising from **professional services** rendered worldwide.

This policy shall not apply to any **claim** arising from **professional services** which are in violation of the laws of the United States, including, but not limited to, U.S. economic or trade sanctions or export control laws administered by the U. S. Treasury, State Department or Commerce Department

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

MURC  06/25/2015

# IN WITNESS

## INDIAN HARBOR INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-1120
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

| | |
|---|---|
| Joseph Tocco | Toni Ann Perkins |
| President | Secretary |

IL MP 9104 0314 IHIC
©2014 X.L. America, Inc.  All rights reserved.  May not be copied without permission.
MURC  06/25/2015

EXHIBIT A

**ENDORSEMENT #001**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED INSURED ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium paid, it is hereby understood and agreed that Item 1. NAMED INSURED on the Declarations of the Policy is deleted in its entirety and replaced with the following:

Item 1.     **NAMED INSURED:**     NIGRO KARLIN SEGAL FELDSTEIN & BOLNO, LLP; NIGRO KARLIN SEGAL FELDSTEIN SEGAL & FELDSTEIN, LLP; NIGRO KARLIN SEGAL & FELDSTEIN, LLP (FKA NIGRO, KARLIN, SEGAL); NIKASEFE, LLC; NKSF-SBP, LLC; NIGRO KARLIN SEGAL & FELDSTEIN, LLC; NKSF-PARADIGM, LLC A CALIFORNIA LIMITED COMPANY; PRESS SCHONIG ROSENTHAL & COMPANY, LLP

All other provisions of this policy remain unchanged.

**ENDORSEMENT #002**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that **EXCLUSION** F. is deleted in its entirety and replaced as follows:

**F.**   Based on or arising out of actual or alleged:

**1.**   Breach of fiduciary duty, responsibility or obligation of the **Insured** in connection with any "employee pension benefit plan" and/or "employment welfare benefit plan" of the **Insured** and/or any employer affiliated with the **Named Insured** through common majority ownership or control and their beneficiaries as those terms are defined in **ERISA**, or any regulation or order issued pursuant thereto, or any similar provisions of any state or federal statutory law or common law;

**2.**   Violation of The Securities Act of 1933;

**3.**   Violation of The Securities Exchange Act of 1934;

**4.**   Violation of State Blue Sky or Securities Law;

or any similar state or federal statutes or regulations, including any **claim**, based upon common law principles of liability, or any rules, regulations or amendments issued in relation to such acts or laws.

All other provisions of this policy remain unchanged.

## ENDORSEMENT #003

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

### AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that **Section V. Conditions**, Item **K.** is deleted in its entirety and replaced as follows:

The **Insured** represents that the information, particulars, documents, representations and statements contained in the application are complete, true and accurate; are deemed incorporated into and constituting part of this policy; are material to the acceptance of the risk assumed by the **Company** under this policy. This policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by Fred Nigro, Micahel Karlin, Miceky Segal or Richard Feldstein will be imputed to any other **Insured**. If any of the information, particulars, documents, representations and statements contained in the application are untrue, this policy will be void only if Fred Nigro, Michael Karlin, Mickey Seagal or Richard Feldstein knew of such untruth.

All other provisions of this policy remain unchanged.

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 62

**ENDORSEMENT #004**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is agreed that Section IV., **EXCLUSION  B.** of this policy is deleted in its entirety and replaced with the following:

**B.** Based on or arising out of **bodily injury** or **property damage** unless the claim results solely from an act or omission committed by the **insured** in the performance of **professional services** provided that:

    1.  Such act or omission was a proximate cause of the **bodily injury** or **property damage**; and
    2.  There is no other policy that is applicable to such **claim**.

It is further agreed that Section IV., **EXCLUSIONS** is amended to include the following additional exclusions:

**L.** Based on or arising out of the ownership, maintenance, operation, use, entrustment to others, loading, or unloading of any motor vehicle, aircraft or watercraft, operated by, rented or loaned to any **Insured**;

**M.** Based on or arising out of any act or omission for which any **Insured** could be held liable under any workers compensation, unemployment compensation or disability benefits law or under any similar law;

**N.** Based on or arising out of **bodily injury** to any employee of the **Insured** arising out of his or her employment by the **Insured** or to any obligation of the **Insured** to indemnify or contribute with another employer because of damages arising out of such injury.

As a condition precedent to the obligations of the **Company** under this endorsement:

1.  The **Named Insured** agrees and warrants that comprehensive general liability insurance, including products/completed operations coverage and premises/operations liability coverage, covering **bodily injury** or **property damage** in the same amount as stated in Item 4. in the Declarations of this policy applying to the **Named Insured's** operations will be kept in force during this **policy period**.

All other provisions of this policy remain unchanged.

© 2012 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 63

**ENDORSEMENT #005**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

**MODIFIED BUSINESS MANAGERS ENDORSEMENT**

In consideration of the premium charged it is understood and agreed that **Section IV. EXCLUSIONS Items D.** and **K.** are deleted and replaced as follows:

**D.**   Based on or arising out of **professional services** performed for or by any business enterprise not named in Item 1. in the Declarations if on or after the date or time of the act or omission giving rise to such **claim**:

   1.   Any **Insured** controlled, owned, operated or managed such entity; or

   2.   Any **Insured** was an owner, partner, or employee of such entity.

   Control of or ownership in a business enterprise is presumed if any **Insured** owned or held 25% or more of the equity and/or debt instruments of such enterprise;

**K.**   Based on or arising out of or related to actual or alleged improper gaining or misuse of trade secrets.

It is further understood and agreed that the following **EXCLUSIONS** are added to this policy:

Based on or arising out of the syndication, promotion, offer or sale of any limited or general partnership or any interest therein;

Based on or arising out of a loss alleged to have been sustained due to the promising or guaranteeing of any rate of return;

Based on or arising out of the purchase or sale of securities for which the Insured received commission or other remuneration;

Based on or arising out of a cease or desist order, the insolvency, bankruptcy, licensing, receivership, liquidation or inability to pay of any insurer, trust, organization or other vehicle directly or indirectly in which any **Insured** has placed or obtained insurance coverage or placed the funds of a client or account (however, this exclusion will not apply if, at the time, the institution had an A.M. Best rating of A- or better at the time of placement).

All other provisions of this policy remain unchanged.

**ENDORSEMENT #006**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

**Swett Advantage/Eclipse+Combined Endorsement**

In consideration of the premium charged, it is understood and agreed that **Item 4. LIMITS OF LIABILITY** in the Declarations of the Policy is amended to include the following:

$ 5,000,000      Each **Claim** and in the Aggregate for What is Covered: Media Content Services Liability Coverage; Network Security Liability Coverage; Privacy Liability Coverage; and First Party Liability Coverage

$ 1,000,000      Sub-Limit of Liability for **Privacy Notification Costs** for **Privacy Liability**

$ 1,000,000      Sub-Limit of Liability for **Regulatory fines** and **defense expenses** for **Privacy Liability**

It is also understood and agreed that **Item 5. DEDUCTIBLE** in the Declarations of the Policy is amended to include the following:

$ 125,000        Deductible each **Claim** for What is Covered: Media Content Services Liability Coverage; Network Security Liability Coverage; Privacy Liability Coverage; and First Party Liability Coverage

$ 125,000        Each **Claim**  for **Privacy Notification Costs**

$ 125,000        Each **Claim**  for **Regulatory fines** and **defense expenses**

It is further understood and agreed that **Section A. DEFINTIONS, claim, damages, defense expenses, Insured, personal injury and subsidiary** are deleted in their entirety and replaced with the following:

1.  **Claim** means a written demand received by the **Insured** for money, services, equitable relief or a request to toll or waive any applicable statute of limitations; with respect to coverage provided under What is Covered Privacy Liability Item 3 only, the institution of a **regulatory proceeding** against the **Insured,** provided, however, **claim** does not include any investigation, proceeding or prosecution initiated by any governmental, administrative, regulatory or prosecutorial authority.

3.  **Damages** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including: statutory damages; punitive, multiplied or exemplary damages, where it is deemed permitted under the laws and public policy of the applicable jurisdiction by law; or pre-judgment and post-judgment interest. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf. However, **damages** does not include:

    a.  taxes, fines, penalties, forfeitures or court-imposed monetary sanctions;

    **b.**  the return, restitution, reduction, compromise or refund of commissions, fees, premiums, charges, gratuities or other compensation paid to an **Insured**;

    **c.**  the cost to correct, complete or re-perform any **professional services** or **media communication**;

    **d.**  the cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including services or injunctive relief; or

    **e.**  any amounts uninsurable as a matter of law or public policy;

    **f.**  **regulatory fines**; provided, however, notwithstanding the foregoing, solely with respect to What is Covered Privacy Liability Coverage Item 3.

The terms "applicable jurisdiction" shall mean for the purposes of this endorsement that jurisdiction most favorable to the insurability of punitive or exemplary damages provided that the jurisdiction must be:

    **a.**  where the punitive or exemplary damages were awarded or imposed; or

    **b.**  where any act which forms the basis of the **Claim** took place; or

    **c.**  where any "**Insured**" is incorporated, resides, or has its principal place of business.

**4.**  **Defense expenses** means:

    **a.**  reasonable and necessary fees charged and expenses incurred by attorneys designated by the **Company** to represent the **Insured**;

    **b.**  all other reasonable and necessary fees, costs and expenses incurred at the **Company's** request;

    **c.**  premiums on appeal bonds, attachment bonds or similar bonds however, the **Company** is not obligated to apply for or furnish such bonds.

In all cases, defense expenses does not mean a **regulatory fine**.

**Defense expenses** do not include salaries, compensation or overhead paid or incurred by the **Company** or by the **Insured**.

**6.**  **Insured** means:

    **a.**  the **Named Insured**;

    **b.**  any **subsidiary**;

    **c.**  any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor, leased employee of the **Named Insured** or a **subsidiary**, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured;**

    **d.**  the representatives of the estate of a deceased **Insured** but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary**;

    **e.**  the guardian, trustee or other fiduciary of a bankrupt **Insured** or an **Insured** who has been judicially declared incompetent, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary;** and

    **f.**  the lawful spouse of an **Insured** solely by reason of (a) such spousal status, domestic partner status or (b) such spouse's or domestic partner's ownership interest in property or assets that are sought as recovery for such **claim.**  Any sums for which such spouse or domestic partner becomes legally obligated to pay on account of such **claim** shall be deemed **damages**;

g.   A **joint venture** in which the **Named Insured** participates as a **joint venture**r pursuant to a written **joint venture** agreement, but only with respect to the liability imposed to the **Named Insured** for its participation in such **joint venture** for **professional services** performed by the **Named Insured**.

8.   **Personal injury** means:

a.   Malicious prosecution, abuse of process, defamation, false imprisonment, wrongful eviction, libel, slander or violation of a person's right of privacy.

b.   Plagiarism, piracy or misappropriation of ideas or style of doing business;

c.   Infringement or misappropriation of copyright, title, slogan, trademark, trade name, trade dress, logo, service mark or service name.

Provided, however, that **Personal injury** shall not include any of the foregoing offenses which arise out of, in the course of, result from or relate to advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**.

12.   **Subsidiary** means any entity which the **Named Insured** maintains a majority interest.  Any entity that becomes a **subsidiary** during the **policy period** and whose annual gross revenue exceeds 25% of the **Named Insured's** gross revenue listed in the application for this policy will be considered an **Insured** only after notice to the **Company** within ninety (90) days of such transaction and any adjustment to the premium or terms and conditions have been agreed by the **Named Insured** and endorsed by the **Company**.

It is further understood and agreed that **Section A. DEFINITIONS** is amended to include the following new definitions:

**Advertising** means publicly disseminated material which promotes the service, business, or product of the **Named Insured** or a client of the **Named Insured**, but only where such material was disseminated at the prior written request of the **Named Insured.**

**Assumed under contract** means liability for **damages** for **personal injury** which the **Insured** is required to indemnify based upon a written contract, hold harmless agreement, indemnity agreement, or similar arrangement, which document: (i) was executed by the **Insured** prior to the occurrence of the **personal injury** for which indemnity is sought, and (ii) requires the **Insured** to indemnify for **personal injury** caused in whole or in part by the content of **media material** used in a **media communication.**
**Breach notification law** means any local, state, federal or foreign statute or regulation requiring the **Insured** to protect the confidentiality and/or security of **personally identifiable information.**

**Computer system** means computer hardware, software, networks, networking equipment, applications, associated electronic devices, electronic data storage devices, input and output devices, and back up facilities operated by and either owned by or leased to the **Insured** by written contract for such purposes.

**Data breach** means the unauthorized taking, acquisition, obtaining, use or disclosure of information on a **computer system**, including but not limited to **personally identifiable information**, charge, debit, and credit card information, banking, financial, and investment services account information, proprietary information, and personal, private, and confidential information.
**Extortion Damages** means money paid by an **Insured** in its capacity as such and with the **Company's** prior written consent to a person reasonably believed to be making an **extortion threat** for the purpose of ending an **extortion threat** against the **Insured**. **Extortion damages** shall include reasonable and necessary expense incurred by an **Insured** with the **Company's** prior written consent that directly relate to the **Insured's** efforts to investigate and/or end an **extortion threat**.

EXHIBIT A
Page 67

**Extortion Threat** means any credible act, error or omission which actually, potentially, or threatens to:

1.  hinder, restrict access to or corrupt an **Insured's computer system**;

2.  introduce **malicious code** into an **Insured's computer system**; or

3.  disclose, disseminate, destroy, corrupt or use the confidential information of a third party taken from an **Insured's computer system** as a result of **unauthorized access** to such **computer system**;

**Joint venture** means a business endeavor, confirmed in a written agreement between the **Named Insured** and one or more other entities or individuals in which the **Named Insured's** participation is to provide **professional services**.

**Malicious code** means any unauthorized, corrupting, or harmful virus, Trojan Horse, worm, logic bomb   or other similar software program, code or script designed to insert itself onto a computer disk or into computer memory and migrate from one computer to another.

**Media communication** means the publishing, transmission, display, broadcast, web cast, dissemination, distribution or release of **media material** to the public by or on behalf of the **Named Insured**.

**Media material** means information in the form of words, sounds, numbers, images, or graphics in electronic, print, digital or broadcast form, including **advertising**.

**Network breach** means:

1.  the alleged or actual **unauthorized access** to a **computer system** that results in:

    a.  the destruction, deletion or corruption of electronic data on a **computer system**;
    b.  a **data breach** from a **computer system**; and
    c.  denial of service attacks against Internet sites or computers; and

2.  transmission of **malicious code** from a **computer system** to third party computers and systems.

    A series of continuing network breaches or related, repeated, or similar network breaches shall be considered a single network breach and be deemed to have occurred at the time of the first such network breach.

**Period of Restoration** means the time period that begins on the specific date the actual interruption of the use of the **Named Insured's computer system** starts and ends on the specific date that the actual interruption of the use of the **computer system** ends. In no event, however, shall the period of restoration mean a time period to exceed sixty (60) days.

**Personally identifiable information** means an individual's name in combination with one or more of the following:

1.  information concerning the individual that constitutes "non-public personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to the Act;

2.  medical or health care information concerning the individual, including "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and regulation issued pursuant to the Act; or

3.  the individual's social security number, driver's license or state identification number, credit, debit, or other financial account numbers and associated security codes, access codes, passwords or pins that allows access to the individual's financial account information; or

EXHIBIT A
Page 68

**4.** other non-public personally identifiable information, as protected under any local, state, federal or foreign statute or regulation.

Provided, however, personally identifiable information does not mean information that is lawfully available to the public, including information from any local, state, federal or foreign governmental entity or body.

**Privacy notification costs** means reasonable and necessary: (1) costs to hire a security expert to determine the existence and cause of any theft or **unauthorized access** to or disclosure of **personally identifiable information**, (2) costs to notify consumers under a **breach notification law**, and (3) fees incurred to determine the actions necessary to comply with a **breach notification law**.

Privacy notification costs will be paid first and will reduce the limit of liability available to pay **damages**. Privacy notification costs does not mean fees, costs or expenses of employees or officers of the **Company**, or salaries, loss of earnings, overhead, or any other remuneration by, to or of any **Insured**. Privacy notification costs also does not mean any fees, costs or expenses related to public relations management.

**Privacy policy** means written documents that set forth the **Insured's** policies, standards, practices and procedures for the acquisition, obtaining, collection, use, disclosure, sharing, transmission, dissemination, correction, access to or supplementation of **personally identifiable information.**

**Privacy wrongful act** means:

**1.** the theft or unintentional disclosure or mishandling of **personally identifiable information** that is in the care, custody, or control of the **Insured**; or

**2.** the **Insured's** unintentional failure to timely disclose a **network breach** in violation of any **breach notification law**.

**3.** Solely with respect to What Is Covered Privacy Liability Coverage Item 2., **privacy wrongful act** also means the **Insured's** unintentional failure to comply with that part of a **privacy policy** that expressly:

    **a.** requires notification to a person of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**;

    **b.** requires the **Insured** to disclose **personally identifiable information** or correct incomplete or inaccurate **personally identifiable information** after a proper request has been made by an authorized person;

    **c.** requires the **Insured** to prevent the loss of **personally identifiable information;**

    **d.** prohibits, prevents, restricts, or limits the improper or intrusive obtaining, acquisition, compilation or use of **personally identifiable information**; and

    **e.** allows a person to opt-in or opt-out of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**.

**Regulatory fines** means any civil fine or civil monetary penalty imposed in a **regulatory proceeding** payable by the **Insured** to the government entity bringing such **regulatory proceeding** in such entity's regulatory or official capacity.

**Regulatory proceeding** means a request for information, civil investigative demand, suit, civil investigation, or civil proceeding commenced by the service of a complaint or similar pleading by or on behalf of any local, state, federal or foreign governmental entity in such entity's regulatory or official capacity which may reasonably be expected to give rise to a **claim** covered by this policy.

**Unauthorized access** means the use of or access to a **computer system** by a person unauthorized by the **Insured** to do so or the authorized use of or access to a **computer system** in a manner not authorized by the **Insured**.

EXHIBIT A
Page 69

It is further understood and agreed that **Section B. WHAT IS COVERED** is amended to include the following:

**Media Content Services Liability Coverage**

Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged act or omission including **personal injury**, in the performance of **media communication**.

**Network Security Liability Coverage**

Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged act or omission including **personal injury**, by the **Insured** in providing or managing the security of a **computer system** that either (i) causes a **network breach**, or (ii) prevents a third party who is authorized to do so from gaining access to a **computer system**.

**Privacy Liability Coverage**

If, at the time of the respective act, error or omission described below, the **Insured** had in force a **privacy policy** pertaining to the subject matter of the corresponding subsection, then**:**

1.  Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged **privacy wrongful act** committed by the **Insured** including **personal injury**, in the performance of **professional services**.

2.  Subject to all terms and conditions of this policy, the **Company privacy notification costs,** in excess of the deductible that the **Named Insured** incurs with the **Company's** prior written consent resulting from the **Named Insured's** legal obligation to comply with a **breach notification law** due to the **Named Insured's** failure to prevent **unauthorized access**, to the extent such **unauthorized access** (1) results in a **data breach** from a **computer system**, and (2) occurred and was reported in writing to the **Company** during the **policy period**, but only to the sub limit and deductible, if purchased, stated in Item 4. and Item 5. on the Declarations of the Policy.

3.  Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **regulatory fines** and **defense expenses** arising out of a **regulatory proceeding** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** resulting from a violation of a **privacy law** by reason of a **privacy wrongful act** by the **Named Insured** committed in the **Named Insured's** capacity as such, but only to the sub limit and deductible, if purchased, stated in Item 4. and Item 5. on the Declarations of the Policy.

**First Party Liability Coverage**

1.  **Extortion Threat**

    Subject to all terms and conditions of this policy, the **Company** will indemnify the **Named Insured** all sums incurred in excess of the deductible and with the **Company's** prior written consent for **extortion damages** as a result of an **extortion threat** first made against an **Insured** in its capacity as such and reported to the **Company** during the **policy period** by a person other than an **Insured** or any person acting or proceeding with the knowledge and consent of, at the direction or request of, or with the assistance of an **Insured.**

2.  **Crisis Management Expense**

Subject to all terms and conditions of this policy, the **Company** will indemnify the **Named Insured** all sums incurred in excess of the deductible and with the **Company's** prior written consent, for the cost of public relations consultants for the purpose of averting or reducing damage to the **Named Insured's** reputation provided that the **claim** results from a **network breach** to the **Named Insured's computer system** or a **privacy wrongful act.**

3.   **Business Interruption**

Subject to all terms and conditions of this policy, the **Company** will indemnify the **Named Insured** all sums in excess of the deductible for the reduction in business income the **Named Insured** sustains during the **period of restoration** of an actual interruption of the use of the **computer system** of the **Named Insured** provided the **claim** results from a **network breach** to the **Named Insured's computer system.**

It is further understood and agreed that **Section C. SUPPLEMENTARY PAYMENTS, Items 2.** and **3.** are deleted in their entirety and replaced as follows:

2.   **Subpoena Expenses**

The **Company** will pay up to $10,000 per **policy period** for expenses incurred in assisting the **Insured** in responding to a subpoena which is received and reported in writing to the **Company** during the **policy period** and relates to **professional services.**  The Deductible is not applicable and payments will not reduce the Limits of Liability.

3.   **Other Payments**

The **Company** will reimburse the **Insured** for actual loss of earnings and reasonable expenses incurred for attendance at trial, court-ordered hearings, depositions, arbitration or mediation at the **Company's** request. The **Company** will pay actual expenses incurred but limited to $750 per day, $10,000 per **claim** and $25,000 per **policy period**. The Deductible is not applicable and payments will not reduce the Limits of Liability.

It is further understood and agreed that **Section D. DEFENSE AND SETTLEMENT** is deleted in its entirety and replaced as follows:

D.   **DEFENSE AND SETTLEMENT**

The **Company** will have the right and duty to defend all covered **claims** brought in the United States, its territories and possessions**.** While the **Company** may seek the **Insured's** input in selecting defense counsel, the **Company** retains the right to make that selection.

Subject to the **Company's** guidelines, the **Insured** and not the **Company** will have the duty to investigate and defend all **claims** brought outside of the United States of America, its territories and possessions. Payment by the **Company** of covered **defense expenses** with respect to any such **claims** shall be subject to compliance by the **Insured** and the **Insured's** selected defense counsel with the **Company's** reasonable guidelines.

The **Company's** obligation to defend and/or pay any **damages** or **defense expenses** will cease when the Limit of Liability has been exhausted.

The **Company** will not settle any **claim** without the **Insured's** consent.  If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claiming party, and the opportunity to effectuate that settlement is lost, then the **Company's** liability for that **claim** will not exceed the lesser of the lost settlement amount plus seventy (70%) of **damages** and **defense expenses** incurred by the **Insured** in excess of the lost settlement amount, or the remaining Limits of Liability.

It is further understood that **Section H. EXCLUSIONS** Items  **8.** and **12.** are deleted in their entirety and replaced with the following:

**8.**  based on or arising out of the actual or alleged gaining of any profit or advantage to which the **Insured** is not legally entitled;

However, this exclusion will not apply to any **Insured** who: (a) did not participate or acquiesce in such act or omission; (b) had no knowledge of or reason to suspect such act or omission; and (c) immediately notified the **Company** in writing after obtaining knowledge of such act or omission.

**12.**  based on or arising out of or related to actual or alleged improper gaining or misuse of materials or trade secrets or infringement of patent.

It is further understood and agreed that **Section H. EXCLUSIONS** is amended to include the following new exclusions:

**Guarantees**

Based upon or arising out of:

**1.**  fees, expenses, cost guarantees, cost representations, pricing guarantees, price representations, contract price,  estimates of probable costs, or cost estimates actually or allegedly being exceeded;

**2.**  any actual or alleged gambling, contest, lottery, promotional game or other game of chance;

**3.**  inaccurate, inadequate, or incomplete description of the price of goods, products or services; or

**4.**  the failure of goods, products or services to conform with any represented or implied quality or performance contained in **advertising**;

**Product Recall - Media**
Based upon or arising out of any loss, cost or expenses incurred or that may be incurred by the **Insured** or others for the:
**1.**  reprinting, recall, withdrawal, removal or disposal of any **media material**, including any media or products containing **media material**;

**Privacy**

Based upon or arising out of:

**1.**  telemarketing or the distribution of unsolicited email, direct mail, or facsimiles;

**2.**  the collection of information by means of electronic 'spiders', 'spy bots', 'spyware' or similar means, wiretapping or bugging, video camera, or radio frequency identification tags; or

**3.**  the unlawful collection or acquisition of **personally identifiable information**, or the failure to comply with a legal requirement to allow a person to opt-in or opt-out of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**;

**Product Recall - Media**
Based upon or arising out of any loss, cost or expenses incurred or that may be incurred by the **Insured** or others for the:
**1.**  reprinting, recall, withdrawal, removal or disposal of any **media material**, including any media or products containing **media material**;

**Business Practice**

Based upon or arising out of any actual or alleged anti-trust violation, price fixing, monopolization, predatory pricing, price discrimination, restraint of trade, unfair competition, violation of consumer protection laws (except consumer privacy protection laws for **claims** involving a **privacy wrongful act**), false, deceptive or unfair trade practices, false, deceptive or misleading **advertising**, or violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, as amended, the Federal Trade Commission Act, or any other local, state, federal, or foreign law involving monopoly, price fixing, anti-trust, predatory pricing, price discrimination, unfair competition, false, deceptive or unfair trade practices, false, deceptive or misleading **advertising**, consumer protection or restraint of trade;

**Privacy**

Based upon or arising out of:

**1.** telemarketing or the distribution of unsolicited email, direct mail, or facsimiles;

**2.** the collection of information by means of electronic 'spiders', 'spy bots', 'spyware' or similar means, wiretapping or bugging, video camera, or radio frequency identification tags; or

**3.** the unlawful collection or acquisition of **personally identifiable information**, or the failure to comply with a legal requirement to allow a person to opt-in or opt-out of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**;

**Software Responsibility**

Based upon or arising out of any actual or alleged failure to install available software product updates and releases, or to apply security related software patches, to computers and other components of a **computer system**;

**Recovery of Profits, Royalties and Fees**

Based upon or arising out of:

**1.** licensing fees or royalties ordered, directed or agreed to be paid by an **Insured** pursuant to a judgment, arbitration award, settlement agreement or similar order for the continued use of a person or entity's copyright, title, slogan trademark, trade name, trade dress, service mark, service name or other intellectual property right.

It is further understood and agreed that in **Section I. ADDITIONAL TERMS AND CONDITIONS**, Items **1. Reporting Requirements and Cooperation**, **2. Claim Reporting Grace Period**, and **3. Multiple Claims** are deleted in their entirety and replaced with the following:

**I.   ADDITIONAL TERMS AND CONDITIONS**

    **1.   Reporting Requirements and Cooperation**

        **a.** If the **Insured** becomes aware of a **claim** or event which might give rise to **privacy notification costs,** the **Insured** must:

           **(1)** advise the **Company** immediately in writing, giving the **Company** all details including the specific act or omission; the injury or damage which has or may result from such act or omission; the circumstances by which the **Insured** first became aware of the act or omission; and, the names, addresses and telephone numbers of all persons who may have knowledge or relevant information;

EXHIBIT A
Page 73

(2) preserve all documents and other evidence relating to the **claim** or event which might give rise to **privacy notification costs**;

(3) send the **Company** documents relating to the **claim** or event which might give rise to **privacy notification costs** when requested;

(4) cooperate with the **Company** and defense counsel in the investigation, defense and settlement of a **claim** or event which might give rise to **privacy notification costs** and enforcement of contribution or indemnification actions against others;

(5) attend hearings, depositions, and trials if requested; and

(6) not admit liability, make any offer of settlement or payments, incur any expense; or assume any obligation arising out of or in any way connected with a **claim** or event which might give rise to **privacy notification costs** without the **Company's** prior written consent.

**b.** If, during the **policy period**, the **Insured** becomes aware of an act or omission in the performance of **professional services** that reasonably may be expected to give rise to a **claim** or event which might give rise to **privacy notification costs**, and if, during the **policy period**, the **Insured** reports to the **Company** in writing: (1) such specific act or omission and the identity of each person and entity responsible for such act or omission; (2) the date on which such act or omission took place; (3) the injury which has or may result from such act or omission and the identity of each person and entity subject to such injury; and (4) and the circumstances by which the **Insured** first became aware of such act or omission; then, any **claim** subsequently made arising out of such specific act or omission shall be deemed to be a **claim** made during the **policy period**.

**2.  Claim Reporting Grace Period**

If a **claim** or event which might give rise to **privacy notification costs** is first made against any **Insured** during the **policy period**, the **Insured** may report it to the **Company** in writing up to and including sixty (60) days following the cancellation, non-renewal or natural expiration of this policy and the **Company** will consider it for coverage as if the **Insured** had reported it in writing to the **Company** within the **policy period**, provided the **Insured** is in compliance with all the terms and conditions of this policy, including payment of all premiums and Deductibles.

**3.  Multiple Claims**

Two or more **claims** or event which might give rise to **privacy notification costs** arising out of the same or related facts, circumstances, situations, transactions or events, or arising out of the same or related acts or omissions, will be considered a single **claim** first made on the earliest of the date that:

**a.** the first such **claim** or event which might give rise to **privacy notification costs** was made, regardless of whether such date is before or during the **policy period;** or

**b.**  any of the acts or omissions alleged in such **claim(s)** or event which might give rise to **privacy notification costs** was first reported under this or any prior policy of insurance, regardless of whether such policy was issued by the **Company**

All other provisions of this policy remain unchanged.

EXHIBIT A
Page 74

**ENDORSEMENT #007**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CONTINUITY COVERAGE**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that **Section H. EXCLUSIONS**, Item 1. is deleted in its entirety and replaced with the following:

1. based on or arising out of acts or omissions that occurred or are alleged to have occurred prior to the earlier of:

   a. the effective date of this policy; or

   b. the effective date of the first policy issued by the **Company** and continuously renewed of which this policy is the last in the series of continuously renewed policies;

   if, on or prior to such date, any **Insured** knew or had a reasonable basis to believe either that a duty had been breached or that a **claim** might be made;

All other provisions of this policy remain unchanged.

**ENDORSEMENT #008**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company

**SERVICE OF PROCESS**

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> John Oster
> 1990 North California Boulevard
> Suite 740
> Walnut Creek, CA  94596

as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

_____
(Authorized Representative)

XL-CASOP 11 10
MURC  06/25/2015

© 2010 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

EXHIBIT A
Page 76



XL Select Professional
Wellington Centre
14643 Dallas Parkway, Suite 770
Dallas, TX 75254
USA
Phone       +1 972-383-7150
Fax          +1 972-383-7180
www.xlinsurance.com

July 6, 2015

Mr. Matt Jones
Swett & Crawford of Georgia, Inc.
16100 N. 71st St., Suite 150
Scottsdale, AZ 85254

RE:    Nigro Karlin Segal & Feldstein LLP
         Policy Number : MPP003725403

Dear Matt:

Enclosed please find the original(s) and one copy of the endorsement(s) for the above-captioned policy.

Thank you for the opportunity to serve the insurance needs of your client.  Should you have any questions, please let us know.

Sincerely,

Marcia Blanco
Vice President
XL Select Professional

Enclosures

**WINS ACCOUNT #** 0005208127

EXHIBIT A
Page 77

**ENDORSEMENT #009**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that ENDORSEMENT #006 is deleted in its entirety and replaced with the following:

**Swett Advantage/Eclipse+Combined Endorsement**

In consideration of the premium charged, it is understood and agreed that **Item 4. LIMITS OF LIABILITY** in the Declarations of the Policy is amended to include the following:

$ 5,000,000     Each **Claim** and in the Aggregate for What is Covered: Media Content Services Liability Coverage; Network Security Liability Coverage; Privacy Liability Coverage; and First Party Liability Coverage

$ 1,000,000     Sub-Limit of Liability for **Privacy Notification Costs** for **Privacy Liability**

$ 1,000,000     Sub-Limit of Liability for **Regulatory fines** and **defense expenses** for **Privacy Liability**

It is also understood and agreed that **Item 5. DEDUCTIBLE** in the Declarations of the Policy is amended to include the following:

$ 200,000     Deductible each **Claim** for What is Covered: Media Content Services Liability Coverage; Network Security Liability Coverage; Privacy Liability Coverage; and First Party Liability Coverage

$ 200,000     Each **Claim**  for **Privacy Notification Costs**

$ 200,000     Each **Claim**  for **Regulatory fines** and **defense expenses**

It is further understood and agreed that **Section A. DEFINTIONS, claim, damages, defense expenses, Insured, personal injury and subsidiary** are deleted in their entirety and replaced with the following:

1.  **Claim** means a written demand received by the **Insured** for money, services, equitable relief or a request to toll or waive any applicable statute of limitations; with respect to coverage provided under What is Covered Privacy Liability Item 3 only, the institution of a **regulatory proceeding** against the **Insured,** provided, however, **claim** does not include any investigation, proceeding or prosecution initiated by any governmental, administrative, regulatory or prosecutorial authority.

3.  **Damages** means a monetary judgment or monetary award which the **Insured** is legally obligated to pay, including: statutory damages; punitive, multiplied or exemplary damages, where it is deemed permitted under the laws and public policy of the applicable jurisdiction by law; or pre-judgment and post-judgment interest.

EXHIBIT A
Page 78

**Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf. However, **damages** does not include:

   a.   taxes, fines, penalties, forfeitures or court-imposed monetary sanctions;
   b.   the return, restitution, reduction, compromise or refund of commissions, fees, premiums, charges, gratuities or other compensation paid to an **Insured**;
   c.   the cost to correct, complete or re-perform any **professional services** or **media communication**;
   d.   the cost of compliance with any order for, grant of or agreement to provide non-monetary relief, including services or injunctive relief; or
   e.   any amounts uninsurable as a matter of law or public policy;
   f.   **regulatory fines**; provided, however, notwithstanding the foregoing, solely with respect to What is Covered Privacy Liability Coverage Item 3.

The terms "applicable jurisdiction" shall mean for the purposes of this endorsement that jurisdiction most favorable to the insurability of punitive or exemplary damages provided that the jurisdiction must be:

   a.   where the punitive or exemplary damages were awarded or imposed; or
   b.   where any act which forms the basis of the **Claim** took place; or
   c.   where any "**Insured**" is incorporated, resides, or has its principal place of business.

4.   **Defense expenses** means:

   a.   reasonable and necessary fees charged and expenses incurred by attorneys designated by the **Company** to represent the **Insured**;

   b.   all other reasonable and necessary fees, costs and expenses incurred at the **Company's** request;

   c.   premiums on appeal bonds, attachment bonds or similar bonds however, the **Company** is not obligated to apply for or furnish such bonds.

In all cases, defense expenses does not mean a **regulatory fine**.

**Defense expenses** do not include salaries, compensation or overhead paid or incurred by the **Company** or by the **Insured**.

6.   **Insured** means:

   a.   the **Named Insured**;

   b.   any **subsidiary**;

   c.   any past or present partner, principal, shareholder, officer, director, member, employee or independent contractor, leased employee of the **Named Insured** or a **subsidiary**, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured;**

   d.   the representatives of the estate of a deceased **Insured** but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary**;

   e.   the guardian, trustee or other fiduciary of a bankrupt **Insured** or an **Insured** who has been judicially declared incompetent, but only for **claims** arising from **professional services** rendered in the course and scope of their duties on behalf of the **Named Insured** or a **subsidiary;** and

   f.   the lawful spouse of an **Insured** solely by reason of (a) such spousal status, domestic partner status or (b) such spouse's or domestic partner's ownership interest in property or assets that are sought as recovery for

EXHIBIT A
Page 79

such **claim.**  Any sums for which such spouse or domestic partner becomes legally obligated to pay on account of such **claim** shall be deemed **damages;**

g. A **joint venture** in which the **Named Insured** participates as a **joint venture**r pursuant to a written **joint venture** agreement, but only with respect to the liability imposed to the **Named Insured** for its participation in such **joint venture** for **professional services** performed by the **Named Insured**.

8. **Personal injury** means:

a. Malicious prosecution, abuse of process, defamation, false imprisonment, wrongful eviction, libel, slander or violation of a person's right of privacy.

b. Plagiarism, piracy or misappropriation of ideas or style of doing business;

c. Infringement or misappropriation of copyright, title, slogan, trademark, trade name, trade dress, logo, service mark or service name.

Provided, however, that **Personal injury** shall not include any of the foregoing offenses which arise out of, in the course of, result from or relate to advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**.

12. **Subsidiary** means any entity which the **Named Insured** maintains a majority interest.  Any entity that becomes a **subsidiary** during the **policy period** and whose annual gross revenue exceeds 25% of the **Named Insured's** gross revenue listed in the application for this policy will be considered an **Insured** only after notice to the **Company** within ninety (90) days of such transaction and any adjustment to the premium or terms and conditions have been agreed by the **Named Insured** and endorsed by the **Company**.

It is further understood and agreed that **Section A. DEFINITIONS** is amended to include the following new definitions:

**Advertising** means publicly disseminated material which promotes the service, business, or product of the **Named Insured** or a client of the **Named Insured**, but only where such material was disseminated at the prior written request of the **Named Insured.**

**Assumed under contract** means liability for **damages** for **personal injury** which the **Insured** is required to indemnify based upon a written contract, hold harmless agreement, indemnity agreement, or similar arrangement, which document: (i) was executed by the **Insured** prior to the occurrence of the **personal injury** for which indemnity is sought, and (ii) requires the **Insured** to indemnify for **personal injury** caused in whole or in part by the content of **media material** used in a **media communication.**

**Breach notification law** means any local, state, federal or foreign statute or regulation requiring the **Insured** to protect the confidentiality and/or security of **personally identifiable information.**

**Computer system** means computer hardware, software, networks, networking equipment, applications, associated electronic devices, electronic data storage devices, input and output devices, and back up facilities operated by and either owned by or leased to the **Insured** by written contract for such purposes.

**Data breach** means the unauthorized taking, acquisition, obtaining, use or disclosure of information on a **computer system**, including but not limited to **personally identifiable information**, charge, debit, and credit card information, banking, financial, and investment services account information, proprietary information, and personal, private, and confidential information.

EXHIBIT A
Page 80

**Extortion Damages** means money paid by an **Insured** in its capacity as such and with the **Company's** prior written consent to a person reasonably believed to be making an **extortion threat** for the purpose of ending an **extortion threat** against the **Insured**. **Extortion damages** shall include reasonable and necessary expense incurred by an **Insured** with the **Company's** prior written consent that directly relate to the **Insured's** efforts to investigate and/or end an **extortion threat**.

**Extortion Threat** means any credible act, error or omission which actually, potentially, or threatens to:

1.  hinder, restrict access to or corrupt an **Insured's computer system**;

2.  introduce **malicious code** into an **Insured's computer system**; or

3.  disclose, disseminate, destroy, corrupt or use the confidential information of a third party taken from an **Insured's computer system** as a result of **unauthorized access** to such **computer system**;

**Joint venture** means a business endeavor, confirmed in a written agreement between the **Named Insured** and one or more other entities or individuals in which the **Named Insured's** participation is to provide **professional services**.

**Malicious code** means any unauthorized, corrupting, or harmful virus, Trojan Horse, worm, logic bomb   or other similar software program, code or script designed to insert itself onto a computer disk or into computer memory and migrate from one computer to another.

**Media communication** means the publishing, transmission, display, broadcast, web cast, dissemination, distribution or release of **media material** to the public by or on behalf of the **Named Insured**.

**Media material** means information in the form of words, sounds, numbers, images, or graphics in electronic, print, digital or broadcast form, including **advertising**.

**Network breach** means:

1.  the alleged or actual **unauthorized access** to a **computer system** that results in:

    a.  the destruction, deletion or corruption of electronic data on a **computer system**;
    b.  a **data breach** from a **computer system**; and
    c.  denial of service attacks against Internet sites or computers; and

2.  transmission of **malicious code** from a **computer system** to third party computers and systems.

    A series of continuing network breaches or related, repeated, or similar network breaches shall be considered a single network breach and be deemed to have occurred at the time of the first such network breach.

**Period of Restoration** means the time period that begins on the specific date the actual interruption of the use of the **Named Insured's computer system** starts and ends on the specific date that the actual interruption of the use of the **computer system** ends. In no event, however, shall the period of restoration mean a time period to exceed sixty (60) days.

**Personally identifiable information** means an individual's name in combination with one or more of the following:

1.  information concerning the individual that constitutes "non-public personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to the Act;

2.  medical or health care information concerning the individual, including "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and regulation issued pursuant to the Act; or

EXHIBIT A
Page 81

**3.** the individual's social security number, driver's license or state identification number, credit, debit, or other financial account numbers and associated security codes, access codes, passwords or pins that allows access to the individual's financial account information; or

**4.** other non-public personally identifiable information, as protected under any local, state, federal or foreign statute or regulation.

Provided, however, personally identifiable information does not mean information that is lawfully available to the public, including information from any local, state, federal or foreign governmental entity or body.

**Privacy notification costs** means reasonable and necessary: (1) costs to hire a security expert to determine the existence and cause of any theft or **unauthorized access** to or disclosure of **personally identifiable information**, (2) costs to notify consumers under a **breach notification law**, and (3) fees incurred to determine the actions necessary to comply with a **breach notification law**.

Privacy notification costs will be paid first and will reduce the limit of liability available to pay **damages**. Privacy notification costs does not mean fees, costs or expenses of employees or officers of the **Company**, or salaries, loss of earnings, overhead, or any other remuneration by, to or of any **Insured**.  Privacy notification costs also does not mean any fees, costs or expenses related to public relations management.

**Privacy policy** means written documents that set forth the **Insured's** policies, standards, practices and procedures for the acquisition, obtaining, collection, use, disclosure, sharing, transmission, dissemination, correction, access to or supplementation of **personally identifiable information.**

**Privacy wrongful act** means:

**1.** the theft or unintentional disclosure or mishandling of **personally identifiable information** that is in the care, custody, or control of the **Insured**; or

**2.** the **Insured's** unintentional failure to timely disclose a **network breach** in violation of any **breach notification law**.

**3.** Solely with respect to What Is Covered Privacy Liability Coverage Item 2., **privacy wrongful act** also means the **Insured's** unintentional failure to comply with that part of a **privacy policy** that expressly:

    **a.** requires notification to a person of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**;
    **b.** requires the **Insured** to disclose **personally identifiable information** or correct incomplete or inaccurate **personally identifiable information** after a proper request has been made by an authorized person;
    **c.** requires the **Insured** to prevent the loss of **personally identifiable information;**
    **d.** prohibits, prevents, restricts, or limits the improper or intrusive obtaining, acquisition, compilation or use of **personally identifiable information**; and
    **e.** allows a person to opt-in or opt-out of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**.

**Regulatory fines** means any civil fine or civil monetary penalty imposed in a **regulatory proceeding** payable by the **Insured** to the government entity bringing such **regulatory proceeding** in such entity's regulatory or official capacity.

**Regulatory proceeding** means a request for information, civil investigative demand, suit, civil investigation, or civil proceeding commenced by the service of a complaint or similar pleading by or on behalf of any local, state, federal or foreign governmental entity in such entity's regulatory or official capacity which may reasonably be expected to give rise to a **claim** covered by this policy.

EXHIBIT A
Page 82

**Unauthorized access** means the use of or access to a **computer system** by a person unauthorized by the **Insured** to do so or the authorized use of or access to a **computer system** in a manner not authorized by the **Insured**.

It is further understood and agreed that **Section B. WHAT IS COVERED** is amended to include the following:

**Media Content Services Liability Coverage**

Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged act or omission including **personal injury**, in the performance of **media communication**.

**Network Security Liability Coverage**

Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged act or omission including **personal injury**, by the **Insured** in providing or managing the security of a **computer system** that either (i) causes a **network breach**, or (ii) prevents a third party who is authorized to do so from gaining access to a **computer system**.

**Privacy Liability Coverage**

If, at the time of the respective act, error or omission described below, the **Insured** had in force a **privacy policy** pertaining to the subject matter of the corresponding subsection, then**:**

1. Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **damages** and **defense expenses** arising out of a **claim** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** by reason of an actual or alleged **privacy wrongful act** committed by the **Insured** including **personal injury**, in the performance of **professional services**.

2. Subject to all terms and conditions of this policy, the **Company privacy notification costs,** in excess of the deductible that the **Named Insured** incurs with the **Company's** prior written consent resulting from the **Named Insured's** legal obligation to comply with a **breach notification law** due to the **Named Insured's** failure to prevent **unauthorized access**, to the extent such **unauthorized access** (1) results in a **data breach** from a **computer system**, and (2) occurred and was reported in writing to the **Company** during the **policy period**, but only to the sub limit and deductible, if purchased, stated in Item 4. and Item 5. on the Declarations of the Policy.

3. Subject to all terms and conditions of this policy, the **Company** will pay on the **Insured's** behalf **regulatory fines** and **defense expenses** arising out of a **regulatory proceeding** first made against the **Insured** during the **policy period,** and reported to the **Company** in writing during the **policy period,** resulting from a violation of a **privacy law** by reason of a **privacy wrongful act** by the **Named Insured** committed in the **Named Insured's** capacity as such, but only to the sub limit and deductible, if purchased, stated in Item 4. and Item 5. on the Declarations of the Policy.

**First Party Liability Coverage**

1. **Extortion Threat**

   Subject to all terms and conditions of this policy, the **Company** will indemnify the **Named Insured** all sums incurred in excess of the deductible and with the **Company's** prior written consent for **extortion damages** as a result of an **extortion threat** first made against an **Insured** in its capacity as such and reported to the

**Company** during the **policy period** by a person other than an **Insured** or any person acting or proceeding with the knowledge and consent of, at the direction or request of, or with the assistance of an **Insured.**

**2. Crisis Management Expense**

Subject to all terms and conditions of this policy, the **Company** will indemnify the **Named Insured** all sums incurred in excess of the deductible and with the **Company**'s prior written consent, for the cost of public relations consultants for the purpose of averting or reducing damage to the **Named Insured's** reputation provided that the **claim** results from a **network breach** to the **Named Insured's computer system** or a **privacy wrongful act.**

**3. Business Interruption**

Subject to all terms and conditions of this policy, the **Company** will indemnify the **Named Insured** all sums in excess of the deductible for the reduction in business income the **Named Insured** sustains during the **period of restoration** of an actual interruption of the use of the **computer system** of the **Named Insured** provided the **claim** results from a **network breach** to the **Named Insured's computer system.**

It is further understood and agreed that **Section C. SUPPLEMENTARY PAYMENTS, Items 2.** and **3.** are deleted in their entirety and replaced as follows:

**2. Subpoena Expenses**

The **Company** will pay up to $10,000 per **policy period** for expenses incurred in assisting the **Insured** in responding to a subpoena which is received and reported in writing to the **Company** during the **policy period** and relates to **professional services.** The Deductible is not applicable and payments will not reduce the Limits of Liability.

**3. Other Payments**

The **Company** will reimburse the **Insured** for actual loss of earnings and reasonable expenses incurred for attendance at trial, court-ordered hearings, depositions, arbitration or mediation at the **Company's** request. The **Company** will pay actual expenses incurred but limited to $750 per day, $10,000 per **claim** and $25,000 per **policy period.** The Deductible is not applicable and payments will not reduce the Limits of Liability.

It is further understood and agreed that **Section D. DEFENSE AND SETTLEMENT** is deleted in its entirety and replaced as follows:

**D. DEFENSE AND SETTLEMENT**

The **Company** will have the right and duty to defend all covered **claims** brought in the United States, its territories and possessions**.** While the **Company** may seek the **Insured's** input in selecting defense counsel, the **Company** retains the right to make that selection.

Subject to the **Company's** guidelines, the **Insured** and not the **Company** will have the duty to investigate and defend all **claims** brought outside of the United States of America, its territories and possessions. Payment by the **Company** of covered **defense expenses** with respect to any such **claims** shall be subject to compliance by the **Insured** and the **Insured's** selected defense counsel with the **Company's** reasonable guidelines.

The **Company's** obligation to defend and/or pay any **damages** or **defense expenses** will cease when the Limit of Liability has been exhausted.

The **Company** will not settle any **claim** without the **Insured's** consent.  If, however, the **Insured** refuses to consent to any settlement recommended by the **Company** and acceptable to the claiming party, and the opportunity to effectuate that settlement is lost, then the **Company's** liability for that **claim** will not exceed the lesser of the lost settlement amount plus seventy (70%) of **damages** and **defense expenses** incurred by the **Insured** in excess of the lost settlement amount, or the remaining Limits of Liability.

It is further understood that **Section H. EXCLUSIONS** Items  8. and 12. are deleted in their entirety and replaced with the following:

8.    based on or arising out of the actual or alleged gaining of any profit or advantage to which the **Insured** is not legally entitled;

However, this exclusion will not apply to any **Insured** who: (a) did not participate or acquiesce in such act or omission; (b) had no knowledge of or reason to suspect such act or omission; and (c) immediately notified the **Company** in writing after obtaining knowledge of such act or omission.

12.   based on or arising out of or related to actual or alleged improper gaining or misuse of materials or trade secrets or infringement of patent.

It is further understood and agreed that **Section H. EXCLUSIONS** is amended to include the following new exclusions:

**Guarantees**

Based upon or arising out of:

1.    fees, expenses, cost guarantees, cost representations, pricing guarantees, price representations, contract price,  estimates of probable costs, or cost estimates actually or allegedly being exceeded;

2.    any actual or alleged gambling, contest, lottery, promotional game or other game of chance;

3.    inaccurate, inadequate, or incomplete description of the price of goods, products or services; or

4.    the failure of goods, products or services to conform with any represented or implied quality or performance contained in **advertising**;

**Product Recall - Media**

Based upon or arising out of any loss, cost or expenses incurred or that may be incurred by the **Insured** or others for the:

1.    reprinting, recall, withdrawal, removal or disposal of any **media material**, including any media or products containing **media material**;

**Privacy**

Based upon or arising out of:

1.    telemarketing or the distribution of unsolicited email, direct mail, or facsimiles;

2.    the collection of information by means of electronic 'spiders', 'spy bots', 'spyware' or similar means, wiretapping or bugging, video camera, or radio frequency identification tags; or

EXHIBIT A
Page 85

**3.** the unlawful collection or acquisition of **personally identifiable information**, or the failure to comply with a legal requirement to allow a person to opt-in or opt-out of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**;

**Product Recall - Media**

Based upon or arising out of any loss, cost or expenses incurred or that may be incurred by the **Insured** or others for the:

**1.** reprinting, recall, withdrawal, removal or disposal of any **media material**, including any media or products containing **media material**;

**Business Practice**

Based upon or arising out of any actual or alleged anti-trust violation, price fixing, monopolization, predatory pricing, price discrimination, restraint of trade, unfair competition, violation of consumer protection laws (except consumer privacy protection laws for **claims** involving a **privacy wrongful act**), false, deceptive or unfair trade practices, false, deceptive or misleading **advertising**, or violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, as amended, the Federal Trade Commission Act, or any other local, state, federal, or foreign law involving monopoly, price fixing, anti-trust, predatory pricing, price discrimination, unfair competition, false, deceptive or unfair trade practices, false, deceptive or misleading **advertising**, consumer protection or restraint of trade;

**Privacy**

Based upon or arising out of:

**1.** telemarketing or the distribution of unsolicited email, direct mail, or facsimiles;

**2.** the collection of information by means of electronic 'spiders', 'spy bots', 'spyware' or similar means, wiretapping or bugging, video camera, or radio frequency identification tags; or

**3.** the unlawful collection or acquisition of **personally identifiable information**, or the failure to comply with a legal requirement to allow a person to opt-in or opt-out of the **Insured's** obtaining, acquisition, compilation or use of their **personally identifiable information**;

**Software Responsibility**

Based upon or arising out of any actual or alleged failure to install available software product updates and releases, or to apply security related software patches, to computers and other components of a **computer system**;

**Recovery of Profits, Royalties and Fees**

Based upon or arising out of:

**1.** licensing fees or royalties ordered, directed or agreed to be paid by an **Insured** pursuant to a judgment, arbitration award, settlement agreement or similar order for the continued use of a person or entity's copyright, title, slogan trademark, trade name, trade dress, service mark, service name or other intellectual property right.

It is further understood and agreed that in **Section I. ADDITIONAL TERMS AND CONDITIONS**, **I**tems **1. Reporting Requirements and Cooperation**, **2. Claim Reporting Grace Period**, and **3. Multiple Claims** are deleted in their entirety and replaced with the following:

**I.   ADDITIONAL TERMS AND CONDITIONS**

EXHIBIT A
Page 86

1.  **Reporting Requirements and Cooperation**

    a.  If the **Insured** becomes aware of a **claim** or event which might give rise to **privacy notification costs,** the **Insured** must:

        (1)  advise the **Company** immediately in writing, giving the **Company** all details including the specific act or omission; the injury or damage which has or may result from such act or omission; the circumstances by which the **Insured** first became aware of the act or omission; and, the names, addresses and telephone numbers of all persons who may have knowledge or relevant information;

        (2)  preserve all documents and other evidence relating to the **claim** or event which might give rise to **privacy notification costs**;

        (3)  send the **Company** documents relating to the **claim** or event which might give rise to **privacy notification costs** when requested;

        (4)  cooperate with the **Company** and defense counsel in the investigation, defense and settlement of a **claim** or event which might give rise to **privacy notification costs** and enforcement of contribution or indemnification actions against others;

        (5)  attend hearings, depositions, and trials if requested; and

        (6)  not admit liability, make any offer of settlement or payments, incur any expense; or assume any obligation arising out of or in any way connected with a **claim** or event which might give rise to **privacy notification costs** without the **Company's** prior written consent.

    b.  If, during the **policy period**, the **Insured** becomes aware of an act or omission in the performance of **professional services** that reasonably may be expected to give rise to a **claim** or event which might give rise to **privacy notification costs**, and if, during the **policy period**, the **Insured** reports to the **Company** in writing: (1) such specific act or omission and the identity of each person and entity responsible for such act or omission; (2) the date on which such act or omission took place; (3) the injury which has or may result from such act or omission and the identity of each person and entity subject to such injury; and (4) and the circumstances by which the **Insured** first became aware of such act or omission; then, any **claim** subsequently made arising out of such specific act or omission shall be deemed to be a **claim** made during the **policy period**.

2.  **Claim Reporting Grace Period**

    If a **claim** or event which might give rise to **privacy notification costs** is first made against any **Insured** during the **policy period,** the **Insured** may report it to the **Company** in writing up to and including sixty (60) days following the cancellation, non-renewal or natural expiration of this policy and the **Company** will consider it for coverage as if the **Insured** had reported it in writing to the **Company** within the **policy period**, provided the **Insured** is in compliance with all the terms and conditions of this policy, including payment of all premiums and Deductibles.

3.  **Multiple Claims**

    Two or more **claims** or event which might give rise to **privacy notification costs** arising out of the same or related facts, circumstances, situations, transactions or events, or arising out of the same or related acts or omissions, will be considered a single **claim** first made on the earliest of the date that:

    a.  the first such **claim** or event which might give rise to **privacy notification costs** was made, regardless of whether such date is before or during the **policy period;** or

EXHIBIT A
Page 87

**b.**     any of the acts or omissions alleged in such **claim(s)** or event which might give rise to **privacy notification costs** was first reported under this or any prior policy of insurance, regardless of whether such policy was issued by the **Company**

All other provisions of this policy remain unchanged.

**ENDORSEMENT #010**

This endorsement, effective 12:01 a.m., June 21, 2015 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that ENDORSEMENT #007 is deleted in its entirety and replaced with the following:

**CONTINUITY COVERAGE**

In consideration of the premium charged, it is understood and agreed that **Section H. EXCLUSIONS**, Item 1. is deleted in its entirety and replaced with the following:

  **1.** based on or arising out of acts or omissions that occurred or are alleged to have occurred prior to the earlier of:

   **a.** the effective date of this policy; or

   **b.** January 1, 2007 and continuously renewed of which this policy is the last in the series of continuously renewed policies;

   if, on or prior to such date, any **Insured** knew or had a reasonable basis to believe either that a duty had been breached or that a **claim** might be made;

All other provisions of this policy remain unchanged.



XL Select Professional
Wellington Centre
14643 Dallas Parkway, Suite 770
Dallas, TX 75254
USA
Phone      +1 972-383-7150
Fax        +1 972-383-7180
www.xlinsurance.com

June 7, 2016

Mr. Matt Jones
Swett & Crawford of Georgia, Inc.
16100 N. 71st St., Suite 150
Scottsdale, AZ 85254

RE:     NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001
        Policy Number : MPP003725403

Dear Matt:

Enclosed please find the original(s) and one copy of the endorsement(s) for the above-captioned policy.

Thank you for the opportunity to serve the insurance needs of your client.  Should you have any questions, please let us know.

Sincerely,

Marcia Blanco
Vice President
XL Select Professional

Enclosures

**WINS ACCOUNT #** 0005208127

EXHIBIT A
Page 90

**ENDORSEMENT #011**

This endorsement, effective 12:01 a.m., June 21, 2016 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

**EXTENSION ENDORSEMENT**

In consideration of the additional premium charged of $22,469.00 it is understood and agreed that **Item 3. POLICY PERIOD** on the Declarations of the Policy is deleted in its entirety and replaced with the following:

**Item 3. POLICY PERIOD:**

FROM:  June 21, 2015  TO:  July 21, 2016

12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein.

All other provisions of this policy remain unchanged.



XL Select Professional
Wellington Centre
14643 Dallas Parkway, Suite 770
Dallas, TX 75254
USA
Phone    +1 972-383-7150
Fax      +1 972-383-7180
www.xlinsurance.com

June 7, 2016

Mr. Matt Jones
Swett & Crawford of Georgia, Inc.
16100 N. 71st St., Suite 150
Scottsdale, AZ 85254

RE:    NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001
       Policy Number : MPP003725403

Dear Matt:

Enclosed please find the original(s) and one copy of the endorsement(s) for the above-captioned policy.

Thank you for the opportunity to serve the insurance needs of your client.  Should you have any questions, please let us know.

Sincerely,

Marcia Blanco
Vice President
XL Select Professional

Enclosures

***WINS ACCOUNT #*** 0005208127

EXHIBIT A
Page 92

**ENDORSEMENT #012**

This endorsement, effective 12:01 a.m., June 21, 2016 forms a part of Policy No. MPP003725403 issued to NIGRO KARLIN SEGAL FELDSTEIN ; SEE ENDORSEMENT #001 by Indian Harbor Insurance Company.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMENDATORY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that ENDORSEMENT #011 is deleted in its entirety and replaced with the following:

**EXTENSION ENDORSEMENT**

In consideration of the additional premium charged of $44,939.00 it is understood and agreed that **Item 3. POLICY PERIOD** on the Declarations of the Policy is deleted in its entirety and replaced with the following:

**Item 3. POLICY PERIOD:**

FROM:  June 21, 2015  TO:  August 20, 2016

12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein.

All other provisions of this policy remain unchanged.